29 P.3d 689 (2001)
144 Wash.2d 516
Bang D. NGUYEN, Petitioner,
v.
STATE of Washington, DEPARTMENT of HEALTH MEDICAL QUALITY ASSURANCE COMMISSION, Respondent.
No. 68994-6.
Supreme Court of Washington, En Banc.
Argued November 16, 2000.
Decided August 23, 2001.
Ralph A. Alfieri, Seattle, for Petitioner.
David Hankins, Assistant Attorney General's Office, Olympia, for Respondent.
SANDERS, J.
The issue here is whether the Due Process Clause of the United States Constitution requires proof by clear and convincing evidence in a medical disciplinary proceeding. We hold due process requires no less, reverse and remand.
Dr. Bang Duy Nguyen[1] is a Seattle medical doctor who began his private medical practice in 1984. From that time until September 1997 he was licensed to practice medicine by the State of Washington. In 1989 his license was suspended because the Medical Disciplinary Board (Board)[2] found his *690 practice had fallen below acceptable professional standards. However, the suspension was stayed on several conditions, one of which being that Dr. Nguyen participate in a preceptor program under the tutelage of Dr. Burdick.
In 1991 Dr. Burdick recommended Dr. Nguyen's monitoring be reduced. The Board agreed Dr. Nguyen had made significant progress and accordingly reduced the level of preceptor review. Dr. Burdick continued to monitor Dr. Nguyen's practice until January 1996, even though he thought the charges against Dr. Nguyen were trivial and marginal.
In November 1994 the Medical Quality Assurance Commission (Commission) proffered a Statement of Charges against Dr. Nguyen. The hearing on those charges was postponed when the Commission issued an agreed order for him to be assessed by the Colorado Personalized Education for Physicians program (CPEP). During this time his license remained in effect.
An Amended Statement of Charges was issued against Dr. Nguyen by the Washington State Department of Health (Department) in October 1996 based in part on the CPEP evaluation. The Department further alleged Dr. Nguyen failed to comply with the 1989 Stay of Suspension agreement and rendered unprofessional care in the treatment of 22 patients. In December 1996 the Commission issued a Summary Suspension of Dr. Nguyen's license based on charges separate and apart from those which were currently pending. These new charges alleged Dr. Nguyen engaged in sexual misconduct with three of his patients.
On February 13, 1997 a hearing was held to set the limits of the Summary Suspension. The suspension was stayed pending a hearing on the merits of the case. All charges against Dr. Nguyen were then consolidated. A six day hearing was held in which Dr. Nguyen was represented by counsel. At the hearing the Commission found by a mere preponderance Dr. Nguyen had inappropriate sexual contact with three of his patients and was therefore unfit to practice medicine. His license was indefinitely revoked and he was prohibited from seeking relicensure for five years.
Dr. Nguyen sought review of the Commission's ruling in Superior Court, but the ruling was affirmed. Bang Nguyen v. Dep't of Health, Med. Quality Assurance Comm'n, 99 Wash.App. 96, 100, 994 P.2d 216 (1999). He then sought review in the Court of Appeals for Division One, and again the Commission's ruling was affirmed. Id. We accepted review to determine whether the Commission applied the correct standard of proof when it decided the case on a mere preponderance.
The Uniform Disciplinary Act (UDA), which establishes the licensure and disciplinary procedures for health care professionals, gives the Department the authority to adopt rules necessary for carrying out its disciplinary functions. RCW 18.130.050(1). To that end the Department has adopted WAC 246-10-606 which states in part: "Except as otherwise provided by statute, the burden in all cases is a preponderance of the evidence."
Dr. Nguyen asserts he was denied his constitutional right to due process and equal protection when the Commission revoked his license to practice medicine based on a hearing which employed a mere preponderance of the evidence standard of proof. The UDA, RCW 18.130.100, states all hearings before the disciplinary authority are governed by the Administrative Procedure Act (APA). Under the APA, a reviewing court may grant relief from an administrative agency's ruling if, among other things, the order is in violation of the constitution either on its face or as applied. RCW 34.05.570(3). Consequently, our review of Dr. Nguyen's claim is appropriate and one upon which relief may be granted.

ANALYSIS
A professional disciplinary proceeding subjects a medical doctor to grave concerns which include the potential loss of patients, diminished reputation, and professional dishonor. State precedent from other jurisdictions is divided.[3] However, reason and *691 applicable Supreme Court precedent dictate these grave concerns merit more than the minimal proof required to protect one from the risk of a mere, yet erroneous, money judgment.
We must not confuse the constitutional right to be applied with the interest to be protected. The Due Process Clause of the Fourteenth Amendment to the United States Constitution precludes states from depriving any person of "life, liberty, or property, without due process of law." The "right" is due process, Dr. Nguyen's interest is his property,[4] his liberty,[5] or both.
*692 At its heart this case concerns the process due an accused physician by the state before it may deprive him his interest in property and liberty represented by his professional license. "Procedural due process imposes constraints on governmental decisions which deprive individuals of `liberty' or `property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). A medical license is a constitutionally protected property interest which must be afforded due process. Painter v. Abels, 998 P.2d 931, 940 (Wyo.2000); Johnson v. Bd. of Governors, 913 P.2d 1339, 1345 (Okla.1996); see also Wash. State Med. Disciplinary Bd. v. Johnston, 99 Wash.2d 466, 474, 663 P.2d 457 (1983) ("A professional license revocation proceeding has been determined to be `quasi-criminal' in nature and, accordingly, entitled to the protections of due process.").
Our Constitution mandates that level of legal process due to reflect "respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitutional history and civilization." Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 162, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). "[I]n the development of our liberty insistence upon procedural regularity has been a large factor. Respect for law will not be advanced by resort, in its enforcement, to means which shock the common man's sense of decency and fair play." Burdeau v. McDowell, 256 U.S. 465, 477, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) (Brandeis, J., dissenting).
Representing a profound attitude of fairness between man and man, and more particularly between the individual and government, "due process" is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess.... It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.

Joint Anti-Fascist Refugee Comm., 341 U.S. at 162-63, 71 S.Ct. 624 (Frankfurter, J., concurring).
The minimum evidentiary standard due a medical doctor in a professional disciplinary proceeding is most importantly based upon the nature of the interest at stakethe interest which is subject to erroneous deprivation if a mistake is made. The more important the interest, the less tolerant we are as a civilized society that it be erroneously deprived.
A process satisfies minimum constitutional requisites inherently due when it provides adequate safeguards to the citizen confronted by an action instigated against him by the state. Primary among these safeguards is the standard of proof. "The function of a standard of proof ... is to `instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" Addington v. Texas, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (quoting In re Winship, 397 U.S. 358, 370, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)).
Addington holds it is the nature and importance of the interest subject to the potentially erroneous deprivation which defines the constitutionally minimum standard of proof. That standard allocates the risk of error between the litigants: it is indicative of the relative importance attached to the ultimate decision. Addington, 441 U.S. at 423, 99 S.Ct. 1804. Thus, the more important the decision, the higher the burden of proof.
At the low end of the spectrum is the civil case involving a monetary dispute between private parties "[s]ince society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in roughly equal fashion." Id. At the high end is the criminal case where the interests of the defendant are of such magnitude that the beyond-a-reasonable-doubt standard of proof is "designed to exclude as nearly as possible the likelihood of an erroneous judgment." Id.
*693 Addington also recognized the constitutional necessity for an intermediate standard of proof employing some combination of the terms "clear," "cogent," "unequivocal," and/or "convincing," in circumstances where the interest is greater than a mere money judgment but less than a generic criminal proceeding. Id. at 424, 99 S.Ct. 1804. It recognized "some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof," id., and concluded a higher standard of proof than a mere preponderance is constitutionally required to reflect society's concern with the consequence of a mistake the lower burden of proof necessarily makes more likely.
The intermediate clear preponderance standard is required in a variety of civil situations "to protect particularly important individual interests," that is, those interests more important than the interest against erroneous imposition of a mere money judgment. Addington, 441 U.S. at 424, 99 S.Ct. 1804. Examples of such proceedings include involuntary mental illness commitment, fraud, "some other quasi-criminal wrongdoing by the defendant" as well as the risk of having one's "reputation tarnished erroneously." Id. Medical disciplinary proceedings fit triply within this intermediate category because they (1) involve much more than a mere money judgment, (2) are quasi-criminal, and (3) also potentially tarnish one's reputation.
Addington makes yet a further distinction: It observes while the interest of the individual may dictate a higher standard of proof to avoid erroneous deprivation, important interests of the state are likewise vindicated by the higher burden as they are potentially compromised by a lower burden of proof which inevitably increases the incidents of erroneous results. Addington, 441 U.S. at 425, 99 S.Ct. 1804. Aside from vindicating interests of accuracy in professional disciplinary proceedings, as Dean Roscoe Pound observed, "There is a public policy in maintaining the interests of individuals as well as one in upholding the agencies of government."[6]
It is important to focus on the nature of the interest at stake in the sense that the more important the interest, the more process is required. The interest of the individual is the primary concern; however, important interests of the state likewise merit a higher burden. A traffic infraction results in a fine. If a mistake is made the consequence is only money (and not much of that) or an erroneous dismissal. In either case the result is of no great consequence. However, charges of aggravated first degree murder may result in the death penalty on the one hand or a killer on the loose on the other. We, as a civilized society, will risk a mistake in the former but tolerate no wrongful conviction in the latter. So too with Dr. Nguyen: His professional license, his reputation, his ability to earn a living for his family are very important interestsmuch more important than money alone.
By the same token society also has the important dual interests that (1) Dr. Nguyen's standard of practice not fall below the acceptable minimum and (2) he not be erroneously deprived his license, as that would erroneously deprive the public access to and benefit from his services. Here each interest dictates a more exacting burden than mere preponderance.
The United States Supreme Court generally uses a three-part test to examine the minimum constitutional process due in a variety of procedural situations. In Mathews, 424 U.S. at 335, 96 S.Ct. 893, the Court considered whether a hearing prior to administrative termination of social security benefits was constitutionally required. The Court structured its consideration on three relevant factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used; and (3) the governmental interest in the added fiscal and administrative burden that additional process would entail. Id. Mathews did not consider the burden of proof; however, these factors have some uneven relevance and application to that issue as well. Cf. Santosky v. Kramer, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (burden of proof in parental *694 rights termination proceeding is constitutionally greater "than that necessary to award money damages in an ordinary civil action" based on Mathews factors).
1. The First Mathews factor: Private Interests
The individual's interest in a professional license is profound. Dr. Nguyen's professional license clearly represents a property interest to which due process protections apply. Moreover this court has recognized a doctor has a liberty interest in preserving his professional reputation that is entitled to protection under the Fourteenth Amendment. Ritter v. Bd. of Comm'rs of Adams County Pub. Hosp. Dist. No. 1, 96 Wash.2d 503, 510-11, 637 P.2d 940 (1981). When facing a medical disciplinary board, "The defendant suffers the possible los[s] of a constitutionally protected property right, the loss of a livelihood, and the loss of a professional reputation." Johnson, 913 P.2d at 1346. "The loss of a professional license is more than a monetary loss; it is a loss of a person's livelihood and loss of a reputation." Id. at 1345.
Loss or suspension of the physician's license destroys his or her ability to practice medicine, diminishes the doctor's standing in both the medical and lay communities, and deprives the doctor of the benefit of a degree for which he or she has spent countless hours and probably tens (if not hundreds) of thousands of dollars pursuing. The severity of such a penalty has led the United States Supreme Court to note that in such situations jurisdictions "reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof." Addington, 441 U.S. at 424, 99 S.Ct. 1804.
In contrast to the relatively negligible interest at stake in a civil proceeding which can only result in a money judgment properly determined by a mere evidentiary preponderance, the intermediate "clear and convincing" standard is typically used in civil cases "involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant." Id. (emphasis added). The standard is appropriate when the individual interests at stake are "`more substantial than mere loss of money.'" Santosky, 455 U.S. at 756, 102 S.Ct. 1388 (quoting Addington, 441 U.S. at 424, 99 S.Ct. 1804). The United States Supreme Court has deemed a higher level of certainty "necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with `a significant deprivation of liberty' or `stigma.'" Id. (emphasis added) (quoting Addington, 441 U.S. at 425-26, 99 S.Ct. 1804).
The Supreme Court could not have described the interest at stake for the doctor in a medical disciplinary proceeding with more clarity than its example in Addington of a quasi-criminal proceeding. This court has expressly held medical disciplinary proceedings are indeed "quasi-criminal." In re Revocation of License of Kindschi, 52 Wash.2d 8, 319 P.2d 824 (1958) described the unique nature of a medical disciplinary proceeding:
It is characterized as civil, not criminal, in nature; yet it is quasi criminal in that it is for the protection of the public, and is brought because of alleged misconduct of the doctor involved. Its consequence is unavoidably punitive, despite the fact that it is not designed entirely for that purpose. It is not strictly adversary in nature. It is essentially a special, somewhat unique, statutory proceeding, in which the medical profession ... inquires into the conduct of a member of the profession and determines whether disciplinary action is to be taken against him in order to maintain sound professional standards of conduct for the purpose of protecting (a) the public, and (b) the standing of the medical profession in the eyes of the public.
Id. at 10-11, 319 P.2d 824 (first emphasis added). We recently reiterated medical discipline is quasi-criminal in Johnston, 99 Wash.2d 466, 663 P.2d 457.
Johnston and Kindschi are unquestionably the law of this jurisdiction.
These two cases use the term "quasi-criminal" in exactly the same sense the United States Supreme Court used the term when it characterized disbarment proceedings "quasi-criminal." In re Ruffalo, 390 U.S. 544, *695 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). If disbarment is quasi-criminal, so must be medical de-licensure. There is no distinction in principle. Other jurisdictions are in accord. Because of their quasi-criminal nature "the charges [against an attorney] must be sustained by convincing proof to a reasonable certainty, and any reasonable doubts should be resolved in favor of the accused." Golden v. State Bar of Cal., 213 Cal. 237, 2 P.2d 325, 329 (1931). The same standard applies to professional discipline for judges. CJCRP 7. In re Disciplinary Proceeding Against Kaiser, 111 Wash.2d 275, 278, 759 P.2d 392 (1988). The Bar is required to prove attorney misconduct by no less than clear and convincing proof. In re Disciplinary Proceeding Against Allotta, 109 Wash.2d 787, 792, 748 P.2d 628 (1988). The Oregon Supreme Court summarizes the rule:
Application of this intermediate standard permeates a line of United States Supreme Court decisions declaring that "clear and convincing" evidence is required in various quasi-criminal proceedings or where the proceedings threaten the individual involved with a significant deprivation of liberty or with a stigma.
Riley Hill Gen. Contractor, Inc. v. Tandy Corp., 303 Or. 390, 737 P.2d 595, 602 (1987).
Because of their unique nature, constitutional due process requires quasi-criminal proceedingsinstigated by the state and involving a stigma more substantial than mere loss of moneybe proved by the clear preponderance of evidence. See Santosky, 455 U.S. at 755, 102 S.Ct. 1388; Addington, 441 U.S. at 425-26, 99 S.Ct. 1804. It would be incongruous and contrary to both Washington and federal precedent to allow a quasi-criminal prosecution to proceed under the lowest standard of proof available.
2. The Second Mathews factor: Risk of Erroneous Deprivation
a. Risk of Erroneous Result.
We must next consider whether the risk of erroneous result requires a heightened burden of proof in medical disciplinary cases. One might argue the procedure Dr. Nguyen received did not create an unacceptable risk of erroneous deprivation because he received a hearing before an administrative agency, he had notice of the charges against him, he had the opportunity to be heard, the right to call witnesses, the right to be represented by counsel, and the right to judicial review. The problem with this approach, however, is that none of these procedural safeguards can substitute for, nor is even relevant to, failure to impose the requisite minimum burden of proof which is specifically designed "to impress the factfinder with the importance of the decision" and thereby reduce the chance of error. Addington, 441 U.S. at 427, 99 S.Ct. 1804.
Moreover, with respect to the risk of erroneous deprivation in this proceeding, there is little solace to be found in the availability of judicial review which is high on deference but low on correction of errors. RCW 34.05.570(3)(e) (A court shall grant relief from an agency order if it decides the order "is not supported by evidence that is substantial when viewed in light of the whole record before the court."). Appellate review cannot cure an inadequate standard of proof. Santosky, 455 U.S. at 757 n. 9, 102 S.Ct. 1388. Appellate courts only determine whether factual findings are supported by substantial evidence and, if so, whether the findings in turn support the conclusions of law and judgment. Green Thumb, Inc. v. Tiegs, 45 Wash.App. 672, 676, 726 P.2d 1024 (1986).
Problems inherent in an interest-depriving procedure are thus only compounded when the possibilities for factual review are extremely limited. The risk of error is increased precisely because the opportunity for correcting error is minimal. Under the second Mathews factor, an increased risk of erroneous result is indicative of the fact that due process requires an increased standard of proof.
The Supreme Court of Wyoming recently visited this very issue holding in Painter that the preponderance standard of proof in medical disciplinary hearings violates both due process and equal protection. Painter, 998 P.2d at 941-42. Analyzing the second prong of the Mathews test, Painter noted, "The risk of error is high in a proceeding seeking to revoke a medical license ... [and] *696 the risk increases where the agency acts as investigator, prosecutor, and decision maker." Id. at 941 (citation omitted). That is essentially what happened here. The Commission investigated and monitored Dr. Nguyen's practice for several years, ordered him to be assessed by the Colorado Personalized Education for Physicians program, and ultimately sat in judgment of him as well.
b. Subjective Standard of Conduct.
The risk of erroneous deprivation is further aggravated when one recalls the ultimate standard of conduct the Commission applies is almost entirely subjective in nature: incompetency, negligence, malpractice, moral turpitude, dishonesty, and corruption were the claims upon which the Commission based its discipline of Dr. Nguyen. Cf. Tellevik v. Real Property, 120 Wash.2d 68, 838 P.2d 111, 845 P.2d 1325 (1992) (ex parte probable cause hearing in a civil forfeiture proceeding sufficient to meet minimal due process because the seizure determination was based on "an objective" standard arising from "`uncomplicated matters that lend themselves to documentary proof.'") Id. at 86, 838 P.2d 111, 845 P.2d 1325 (quoting Connecticut v. Doehr, 501 U.S. 1, 14, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991)). It is difficult to imagine a more subjective and relative standard than that applied in a medical discipline proceeding where the minimum standard of care is often determined by opinion, and necessarily so.
Additionally, as the Court in Santosky noted, an elevated standard of proof militates against the possibility that the fact finder might deprive an individual of his license based solely on a few isolated incidents of unusual conduct. Addington, 441 U.S. at 427, 99 S.Ct. 1804; Santosky, 455 U.S. at 764, 102 S.Ct. 1388. Such concern is especially applicable to medical discipline where the charges stem from what could be an anomaly in an otherwise exemplary career.
In summary, the administrative procedure, in addition to the subjective standard of care, increases the risk of error and in itself justifies a heightened burden of proof under the second Mathews factor.
3. The Third Mathews Factor: Government Interests
The last factor called to our attention by Mathews is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335, 96 S.Ct. 893. As one can quickly discern from a simple reading of the text, this requirement relates to practical and financial burdens to be imposed upon the government were it to adopt a possible substitute procedure for the one currently employed. As the Supreme Judicial Court of Massachusetts phrased it, the last factor examines "the government's interest in the efficient and economic administration of its affairs." Thompson v. Commonwealth, 386 Mass. 811, 438 N.E.2d 33, 37 (1982). This requirement does not relate to the interest which the government attempts to vindicate through the procedure itself.
Does requiring proof by a clear preponderance in a medical disciplinary proceeding somehow impose unacceptable fiscal and administrative burdens upon the government? Obviously not. An increased burden of proof would not have the slightest fiscal impact upon the state, as it would not appreciably change the nature of the hearing per se. In Mathews, for example, this factor was important in the context of the recipient's claim that he should be afforded an opportunity for an evidentiary hearing prior to termination of social security disability benefit payments. Mathews concluded a prior evidentiary hearing was not required in that circumstance in part because of the incremental cost resulting from the increased number of hearings as well as the expense of providing benefits to ineligible recipients pending final decision. Mathews, 424 U.S. at 347, 96 S.Ct. 893. Increased cost is clearly not a fact or concern here.
Even if we were to consider the government "interest" in a reliable substantive outcome as part of our Mathews analysis, the matter would still be resolved in favor of Dr. Nguyen. The government's interests are only furthered by medical disciplinary proceedings which reach an accurate and reliable result. Cf. Addington, 441 U.S. at 426, *697 99 S.Ct. 1804 ("Since the preponderance standard creates the risk of increasing the number of individuals erroneously committed, it is at least unclear to what extent, if any, the state's interests are furthered by using a preponderance standard in such commitment proceedings."); Santosky, 455 U.S. at 766-68, 102 S.Ct. 1388 (a standard of proof more strict than preponderance of the evidence is consistent with promoting the state's interest in a parental rights termination proceeding).
The state asserts the Commission serves the societal interest of protecting the public from physicians who abuse their patients or who are not competent to practice. Answer to Pet. for Review at 9. This it undoubtedly does. One of the purposes for creating the Commission was "[b]ecause the health and well-being of the people of this state are of paramount importance." RCW 18.71.003. Prior to the creation of the Commission,[7] this court noted a medical disciplinary authority performs the special function of "protecting (a) the public, and (b) the standing of the medical profession in the eyes of the public." Kindschi, 52 Wash.2d at 11, 319 P.2d 824.
However it is difficult to see how either of these goals is furthered by the Commission's employing a low standard of proof which results in a greater number of erroneous license revocations than would occur if it, at no additional cost or burden, applied a higher standard. It makes little sense to contend either the health of the public or its confidence in the medical profession is bolstered by the erroneous de-licensure of qualified physicians. The public is ultimately dependent upon the provision of a physician's services, not their elimination.
In the final analysis, there are neither facts, reasons, nor arguments to support the proposition that the Commission cannot realize its purpose by using a higher standard of proof.

CONCLUSION
The interest of the medical practitioner in a professional disciplinary proceeding is obviously much greater than that which would be implicated by the mistaken rendition of a mere money judgment against him. It is much more than the loss of a specific job. It involves the professional's substantial interest to practice within his profession, his reputation, his livelihood, and his financial and emotional future. That the public has an interest in the competent provision of health care services lends even greater importance to the assurance against erroneous deprivation which a higher standard would promote, as ultimately the public is dependent upon the provision of such services, not their elimination. An inadequate standard of proof increases the risk of erroneous deprivation and, therefore, requires recognition, as so many other courts have, that the constitutional minimum standard of proof in a professional disciplinary proceeding for a medical doctor must be something more than a mere preponderance.
Because our determination concerning Dr. Nguyen's due process argument requires reversal, we need not determine his equal protection claim.
The decisions of the Court of Appeals, the Superior Court, and the Medical Quality Assurance Commission are vacated. The matter is remanded to the Commission to conduct such further proceedings as are necessary to determine this matter by clear and convincing proof. Costs on appeal are awarded to petitioner.
ALEXANDER, C.J., SMITH, JOHNSON, and MADSEN, JJ. concur.
IRELAND, J. (dissenting).
We are asked in this case to decide if the Medical Quality Assurance Commission (Commission) denied due process to a physician subject to discipline when it employed a preponderance of the evidence standard as the burden of proof for factual determinations. Contrary to the majority, we submit the preponderance standard adopted by the Department of Health (Department) by regulation for all health care professionals subject to the Uniform Disciplinary Act, chapter 18.130 RCW, does not violate principles of *698 due process or equal protection. We would affirm the Commission's findings and revocation of Dr. Bang Nguyen's[1] license to practice medicine.

ANALYSIS
The Uniform Disciplinary Act (Act)[2] establishes the licensure and disciplinary procedures for all health care professionals in Washington. It provides a broad array of due process guarantees for professionals subject to discipline including notice of charges, a right to a hearing on any charges with examination and cross-examination of witnesses, the right to counsel, and judicial review. The Act gives the Department the authority to adopt rules necessary for carrying out its disciplinary functions. RCW 18.130.050(1). To that end the Department has adopted WAC 246-11-520 which states in part: "[e]xcept as otherwise provided by statute, the burden in all cases is a preponderance of the evidence." Thus, the preponderance standard was applied by the Commission in these proceedings pursuant to a regulation validly adopted under the grant of such authority by the Legislature in the Act.
The preponderance standard used in civil proceedings is generally applied in administrative hearings in Washington unless otherwise mandated by statute or due process principles. Thompson v. Dep't of Licensing, 138 Wash.2d 783, 797, 982 P.2d 601 (1999). See also Steadman v. Sec. & Exch. Comm'n, 450 U.S. 91, 103-04, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) (upholding the Security and Exchange Commission's (SEC) use of preponderance of evidence standard in part because of the agency's long-standing employment of that standard in disciplinary proceedings even where the statute did not specify a specific burden of proof).
Upon appeal, findings of fact under the Administrative Procedure Act (APA), chapter 34.05 RCW, are reviewed under a substantial evidence test: findings must be supported "by evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(e). Valentine v. Dep't of Licensing, 77 Wash.App. 838, 894 P.2d 1352, review denied, 127 Wash.2d 1020, 904 P.2d 300 (1995). Substantial evidence is "`evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" Thieu Lenh Nghiem v. State, 73 Wash.App. 405, 412, 869 P.2d 1086 (1994) (quoting Olmstead v. Dep't of Health, 61 Wash.App. 888, 893, 812 P.2d 527 (1991)).
Dr. Nguyen, however, asserts he was denied his constitutional right to due process and equal protection when the Commission revoked his license to practice medicine based on findings established by the preponderance of the evidence standard of proof. He contends the clear, cogent, and convincing standard of proof is constitutionally mandated. RCW 34.05.570(3).[3]
A. DUE PROCESS
In analyzing the necessary standard of proof to satisfy due process, it is worthwhile to recall basic due process principles. In the face of a contention that statutes or administrative regulations implementing them are unconstitutional, such regulations and statutes are generally presumed to be constitutional. Keene v. Bd. of Accountancy, 77 Wash.App. 849, 854, 894 P.2d 582, review denied, 127 Wash.2d 1020, 904 P.2d 300 (1995). Moreover, it is well settled the courts will not declare a statute unconstitutional, unless its conflict with the constitution is plain beyond a reasonable doubt. Island County v. State, 135 Wash.2d 141, 146-47, 955 P.2d 377 (1998). Thus, we must not *699 lightly declare unconstitutional the Legislature's selection of the preponderance standard of proof.
The essence of due process is notice and the opportunity to be heard. Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). See also In re Marriage of McLean, 132 Wash.2d 301, 308, 937 P.2d 602 (1997); State v. Rogers, 127 Wash.2d 270, 898 P.2d 294 (1995). Indeed, Dr. Nguyen has an interest in his professional license entitling him to due process before that license can be suspended or revoked. We have often noted the protections of due process apply to medical disciplinary proceedings. See, e.g., Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739, 818 P.2d 1062 (1991). As the United States Supreme Court has stated:
It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions. Here all vocations are open to every one on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution.... But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the State for the protection of society.

Dent v. West Virginia, 129 U.S. 114, 121-22, 9 S.Ct. 231, 32 L.Ed. 623 (1889) (emphasis added).
For purposes of due process, the standard of proof indicates a constitutional policy regarding the tolerable level of risk of error for factual conclusions in a particular type of decision. Addington v. Texas, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). The United States Supreme Court set out an analytical protocol for determining such questions in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), where the Court discussed the quantum of process due Social Security disability benefits recipients before the government could terminate the payments. The Court established a three-part test requiring an examination and balancing of: (1) the nature of the private interest affected by the proceeding; (2) the countervailing governmental interest to be furthered by the proceeding; and (3) the risk of error in the ultimate determination created by the use of the particular burden of proof. Id. at 335, 96 S.Ct. 893. We first adopted the Mathews protocol in In re Pers. Restraint Petition of Sinka, 92 Wash.2d 555, 565, 599 P.2d 1275 (1979), and have employed it in numerous cases since then. See, e.g., Soundgarden v. Eikenberry, 123 Wash.2d 750, 768, 871 P.2d 1050, cert. denied, 513 U.S. 1056, 115 S.Ct. 663, 130 L.Ed.2d 598 (1994); Sherman v. State, 128 Wash.2d 164, 184, 905 P.2d 355 (1995). Although Mathews concerned the need for an evidentiary hearing prior to termination of benefits and this case addresses the standard of proof, Mathews applies to the analysis of the burden of proof in disciplinary proceedings; Mathews provides what is fundamentally a balancing test with no one element controlling. We turn to the application of that test under these facts.
1. The Private Interest Affected
There is little question Dr. Nguyen's professional license represents a property interest[4] to which due process protections apply. Johnson v. Bd. of Governors, 913 P.2d 1339, 1345 (Okla.1996). Dr. Nguyen obtained his license to practice medicine from the State of Washington when he fulfilled the statutory requirements for a license. However, such a license is entirely defeasible, after a hearing, for a host of statutory reasons pertaining to such matters as incompetent or dishonest *700 practices. As we said in State v. Hazzard, 139 Wash. 487, 493-94, 247 P. 957 (1926):
Appellant urges that the license to practice is a property right, and cites our holding in State ex rel. Fryberg v. Maybury, 134 Wash. 641, 236 Pac. 566 [(1925)], where, under the authority of Hewitt v. Board of Medical Examiners, 148 Cal. 590, 84 Pac. 39 [(1906)], we said that the right to practice is "a valuable property right." But the expression was not used in the sense in which those words are sought to be here construed by appellant. In that case it was sought to revoke, without cause, a license regularly issued and we held that the right to continue to hold it was such a property right that it could not be taken away except for cause. It was not intended to hold that it was such a property right, that it could not be taken away by reason of the failure of the holder thereof to maintain that good character required by law of the holder thereof. The right to hold a public office is also in a sense a valuable property right, but it has almost universally been held that the holder thereof may be removed upon conviction of crime, and that a pardon does not restore the former holder thereto. State ex rel. Webb v. Parks, 122 Tenn. 230, 122 S.W. 977 [(1909)]; State v. Carson, 27 Ark. 469 [(1872)].
There is a wide distinction between the right which one, whether felon or free, has to hold his own property against the world and deny even the state the right to take it from him without compensation therefor, and that other right to practice a profession which demands peculiar qualifications in order to protect the public, and requires a license. As to the latter, there can be, strictly speaking, no inherent right thereto, if considered apart from the question of qualifications. One qualified in all respects has a right to a license, but one unqualified has no right whatever.

See also Dent v. West Virginia, 129 U.S. at 121-22, 9 S.Ct. 231 (professional license is a property interest different from real or personal property).
Dr. Nguyen implies his license may be a fundamental right,[5] citing Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and Addington, to support his conclusion clear and convincing evidence is the constitutionally required standard of proof in medical disciplinary hearings. Both Santosky and Addington involved rights more fundamental than a professional license.
Santosky involved the termination of parental rights, holding that due process requires clear and convincing evidence in a proceeding to permanently terminate such rights. 455 U.S. at 768, 102 S.Ct. 1388. Parental rights are fundamental, constitutional rights. In re Welfare of Luscier, 84 Wash.2d 135, 137, 524 P.2d 906 (1974) (parental rights are fundamental rights requiring for deprivation "full panoply of due process safeguards"). They are not rights the State may award or deprive one of depending on the fulfillment and maintenance of certain qualifications. By contrast, the right to practice medicine in Washington requires graduation from an approved medical school, completion of two years of acceptable postgraduate medical training, good moral character, and the physical and mental ability to practice medicine. RCW 18.71.050. All licensed physicians must fulfill continuing education *701 requirements to retain their licenses. RCW 18.71.080. There are no written tests required to become a parent, and no continuing education requirements. Unlike parenting, there is no fundamental, constitutional right to practice medicine free of state regulation.
Addington, which was followed in Santosky, involved involuntary commitment and required clear and convincing evidence to support such commitments. 441 U.S. at 432-33, 99 S.Ct. 1804. Personal liberty may be a fundamental right. Fay v. Noia, 372 U.S. 391, 401, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (discussing history of habeas corpus), overruled in part on other grounds sub nom. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). See also State ex rel. T.B. v. CPC Fairfax Hosp., 129 Wash.2d 439, 452, 918 P.2d 497 (1996) ("involuntary commitment represents `a massive curtailment of liberty'") (quoting Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972)).
A professional disciplinary process may implicate liberty interests as well, particularly when stigma may result from such proceedings. But a liberty interest in the sense of freedom from confinement is not implicated by professional discipline.[6]
Dr. Nguyen argues vigorously he has a liberty interest at stake here because of the stigma associated with allegations of sexual misconduct. However, he fails to distinguish this case from federal precedent. Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 1164-65, 47 L.Ed.2d 405 (1976), establishes the opposite: "[W]e hold that the interest in reputation asserted in this case is neither `liberty' nor `property' guaranteed against state deprivation without due process of law." Accord Siegert v. Gilley, 500 U.S. 226, 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (syllabus), 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("[U]nder Paul v. Davis ... injury to reputation by itself is not a protected `liberty' interest."). "Stigma-plus" is required to establish a liberty interest. We agree with Dr. Nguyen that a professional license is a significant property interest with overtones of a liberty interest where the professional's reputation is at stake, but the authorities cited do not establish that it is such a fundamental interest that a clear and convincing standard of proof is invariably required for its deprivation.
Dr. Nguyen also asserts the Commission's process is "quasi-criminal" meriting a higher burden of proof, citing In re Revocation of License of Kindschi, 52 Wash.2d 8, 10, 319 P.2d 824 (1958). The use of the "quasi-criminal" language in Kindschi is unhelpful because we must still decide the standard of proof due process compels, regardless of the adjective we might select to characterize the nature of the disciplinary proceeding. Merely designating the proceeding as quasi-criminal does nothing to inform that decision. Kindschi does not address the applicable standard of proof. Moreover, our cases repeatedly state medical disciplinary proceedings are not of a penal nature. We said in Kindschi the purposes of medical disciplinary action are to protect the public and the standing of the medical profession in the eyes of the public. Kindschi, 52 Wash.2d at 11, 319 P.2d 824. We repeated this formulation in both Haley v. Med. Disciplinary Bd., 117 Wash.2d at 743, 818 P.2d 1062; and Heinmiller v. Dep't of Health, 127 Wash.2d 595, 605, 903 P.2d 433, 909 P.2d 1294 (1995), cert. denied, 518 U.S. 1006, 116 S.Ct. 2526, 135 L.Ed.2d 1051 (1996). Protection of the public is a remedial, not a penal, goal, and *702 although punishment might be the inevitable consequence of a disciplinary action, punishment is never the goal. In re Discipline Proceeding Against Vetter, 104 Wash.2d 779, 792, 711 P.2d 284 (1985).
Dr. Nguyen goes so far as to suggest that Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323, compels the conclusion that if something more important than mere money is involved, a higher standard of proof is always required. Addington does not go that far; it merely states that when there are allegations of fraud or quasi-criminal wrongdoinginterests amounting to more than the loss of mere moneysome courts have applied a higher standard of proof to "reduce the risk to the defendant of having his reputation tarnished erroneously." Addington, 441 U.S. at 424, 99 S.Ct. 1804. There is no facile calculus for determining in every case what the standard of proof should be.[7]
In sum, upon review of the foregoing authorities, there is no question Dr. Nguyen's private interest is significantly affected.
*703 The revocation of Dr. Nguyen's license exposed him to loss of livelihood, diminished reputation, and professional dishonor, particularly where sexual misconduct is alleged. The private interest affected here is important, and Dr. Nguyen has a significant right in his medical license. But Dr. Nguyen's interest in his license does not necessarily require a heightened standard of proof. We must consider the other Mathews factors.
2. The Risk of Erroneous Deprivation
Under the second prong of the Mathews test, the procedure Dr. Nguyen received did not create an unacceptable risk of erroneous deprivation of, or restriction on, his license to practice medicine. The Supreme Court said in Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980):
The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.
Judge Friendly listed what he called the "elements of a fair hearing": (1) an unbiased tribunal; (2) notice of the proposed action and the grounds asserted for it; (3) an opportunity to present reasons why the proposed action should not be taken; (4) the right to call witnesses; (5) the right to know the evidence against one; (6) the right to have the decision based only on the evidence presented; (7) counsel; (8) the making of a record; (9) a statement of the reasons; (10) public attendance; (11) judicial review. Henry J. Friendly, "Some Kind of Hearing," 123 U. PA. L.REV. 1267, 1279-95 (1975). Evaluating the Commission process objectively, using the factors Judge Friendly enumerated regarding due process, demonstrates the statutory scheme affords ample protection to a professional's interests.
a. Unbiased Tribunal
The Commission, in accordance with the existing statutes, consisted of one licensed physician from each of Washington's congressional districts, two physician's assistants, and four members of the public, all appointed by the Governor. RCW 18.71.015. The public members are limited to people who are not members of other health profession boards and do not "have a fiduciary obligation to a facility rendering health services regulated by the Commission, or have a material or financial interest in the rendering of health services regulated by the commission." RCW 18.71.015. Thus, professionals like Dr. Nguyen are judged by panels consisting largely of professional peers, rather than solely by administrative law judges or other judicial officers.[8] We held in Haley and Heinmiller the special expertise of professional peers sitting on a professional disciplinary body can give sufficient content to general terms like "moral turpitude" to withstand vagueness challenges. Haley, 117 Wash.2d at 733, 818 P.2d 1062; Heinmiller, 127 Wash.2d at 605, 903 P.2d 433. This special expertise also serves to protect the professional from uninformed disciplinary decisions. There is nothing to suggest from the statutory makeup of the Commission that Dr. Nguyen did not receive the benefit of an unbiased tribunal.
b. Notice of the Proposed Action and the Grounds Asserted For It
RCW 18.130.090 requires the disciplinary authority to serve the license holder with a statement of charges detailing the alleged violations. Dr. Nguyen was served with the statement of charges and an amended statement of charges. As shown by Dr. Nguyen's reaction to this notice, this document provided him with adequate notice of the grounds for imposition of discipline.
c. An Opportunity to Present Reasons Why the Proposed Action Should Not Be Taken
Pursuant to RCW 18.130.100, Dr. Nguyen received a hearing under the auspices of the *704 APA lasting over six days.[9] A review of the record of the hearing reveals a vigorously contested trial in which both sides were zealously represented by counsel. At the hearing, Dr. Nguyen presented witnesses on his own behalf. After the hearing, he appealed to the superior court where he received appropriate judicial review.
Dr. Nguyen vigorously pursued his appeal. In the trial court and in the Court of Appeals, Dr. Nguyen assigned error to the Commission's findings of fact, which the trial court and the Court of Appeals affirmed. Indeed, Dr. Nguyen has not attempted to demonstrate which particular Commission findings of fact would not be sustained if a clear, cogent, and convincing standard were employed.
d. The Right to Call Witnesses
RCW 34.05.446 gives both the presiding officer and counsel for parties the right to issue subpoenas to compel witnesses to attend the hearing. At the hearing, Dr. Nguyen called numerous witnesses to testify for him.
e. The Right to Know the Evidence Against One
RCW 34.05.446(3) permits employment of all the civil discovery rules contained in CR 26 through 36, at the discretion of the presiding officer. Dr. Nguyen's counsel had the opportunity to review the investigative file, and conduct appropriate discovery. Dr. Nguyen has not alleged that his ability to present a defense was limited by inadequate discovery procedures.
f. The Right to Have the Decision Based Only on the Evidence Presented
There is no provision or authority in the APA or the Act for the Commission to make its decision on anything other than information presented at the hearing. The APA requires any findings of fact to be "based exclusively on the evidence of record in the adjudicative proceeding and on matters officially noticed in that proceeding." RCW 34.05.461(4).
g. Right to Counsel
RCW 34.05.428(2) permits representation by counsel. Dr. Nguyen was represented throughout the hearing by very competent counsel.
h. The Making of a Record
RCW 34.05.449(4) requires the recording of hearings. The recording of the hearing in this case was transcribed, and appears in the appellate record.
i. A Statement of the Reasons
The Commission's findings of fact and conclusions of law were set forth in a 74-page opinion and were supported by the evidence.
j. Public Attendance
RCW 34.05.449(5) provides hearings are open to public observation. The record is silent as to whether members of the public attended Dr. Nguyen's hearing.
k. Judicial Review
RCW 34.05.510 through .598 provides for judicial review of the Commission's decision. Pursuant to those provisions, Dr. Nguyen sought review in the superior court, the Court of Appeals, and now this Court.
In sum, the statute and regulations for medical discipline afforded Dr. Nguyen as much procedural due process as the law allows in any context, and certainly no less than the constitution requires. Moreover, the unequivocal impression the record conveys is of a case exhaustively litigated with appropriate skill and fervor by both parties. The conduct of the hearing, before a panel the majority of whom were medical practitioners, does not support Dr. Nguyen's claim regarding an unacceptable risk of inadvertent or erroneous deprivation of Dr. Nguyen's professional *705 license. This risk was certainly minimal given the numerous procedural protections afforded Dr. Nguyen.
3. The Strength of the Public Interest in Professional Discipline
The third prong of Mathews, the public interest in professional discipline, including the government's added fiscal and administrative burdens in having a heightened standard of proof in professional disciplinary hearings, is critical here.
Under the plain reading of Mathews, the cost to the government is only one component of the government's interest. See, e.g., Morris v. Blaker, 118 Wash.2d 133, 145, 821 P.2d 482 (1992) (noting "the government's interest in being able to quickly remove dangerous weapons from those who present a danger to the public weighs against a prerevocation notice and hearing procedure"); In re Harris, 98 Wash.2d 276, 286, 654 P.2d 109 (1982) (under Mathews balancing test, because State's interest in statutory summons procedure was not "emergent," due process requires a finding of probable dangerousness before a summons may issue). The Mathews Court itself said, "Financial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision." Mathews, 424 U.S. at 348, 96 S.Ct. 893.
The United States Supreme Court demonstrated how the balance is to be drawn: "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." Addington, 441 U.S. at 427, 99 S.Ct. 1804. Santosky, in evaluating the third prong of the Mathews test, is particularly illustrative of the use of factors other than just fiscal and administrative costs: "Two state interests are at stake in parental rights termination proceedingsa parens patriae interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." Santosky, 455 U.S. at 766, 102 S.Ct. 1388.
The public interest in professional discipline encompasses both the government's interest in efficiently processing professional disciplinary complaints and the public's interest in competent, honest health care practitioners. In Washington, the latter interest weighs heavily against a heightened standard of proof in medical discipline cases. Washington law on health care professional discipline indicates a strong remedial policy to protect the public from incompetent or unscrupulous practitioners.
This remedial policy emanates from the constitutional authority of the Legislature over the practice of medicine. Article XX, section 2 of our state constitution provides:
The legislature shall enact laws to regulate the practice of medicine and surgery, and the sale of drugs and medicines.
See also Seeley v. State, 132 Wash.2d 776, 789, 940 P.2d 604 (1997).
We have held the legislative power over the practice of the healing arts is virtually plenary. In Ellestad v. Swayze, 15 Wash.2d 281, 291, 130 P.2d 349 (1942), we stated:
The authorities are uniform to the effect that the legislature may adopt such regulations and restrictions of the healing arts as it may consider necessary for the public good, and the courts will not question the wisdom or desirability of such legislative requirements, so long as there is any reasonable basis upon which the legislative determination can rest.
See also State v. Wilson, 11 Wash.App. 916, 528 P.2d 279 (1974). The use of the phrase "any reasonable basis" is indicative of our early determination to apply only the most relaxed standard of review to legislative enactments with respect to the practice of medicine. We have also noted the significance of the public's interest in the regulation of the medical profession:
The daily practice of medicine concerns life and death consequences to members of the public. They have an understandable interest in the maintenance of sound standards of conduct by medical practitioners. The public has a right to expect the highest *706 degree of trustworthiness of the members of the medical profession.
Kindschi, 52 Wash.2d at 12, 319 P.2d 824.
To carry out the constitutional mandate to regulate the practice of medicine and surgery, the Legislature created the Commission, the purpose of which is set forth in detail in RCW 18.71.003:
(1) In the exercise of the police power of the state to protect public health, to promote the welfare of the state, and to provide an adequate public agency to act as a disciplinary body for the members of the medical profession licensed to practice medicine and surgery in this state;
(2) Because the health and well-being of the people of this state are of paramount importance;
(3) Because the conduct of the members of the medical profession licensed to practice medicine and surgery in this state plays a vital role in preserving the health and well-being of the people of the state; and
(4) Because the agency which now exists to handle disciplinary proceedings for members of the medical profession licensed to practice medicine and surgery in this state is ineffective and very infrequently employed, and consequently there is no effective means of handling such disciplinary proceedings when they are necessary for the protection of the public health.
The Legislature articulated a similar concern about protection of the public when it enacted the Act. RCW 18.130.010 indicates the purpose of the Act "is to assure the public of the adequacy of professional competence and conduct in the healing arts."
We have also expressed similar purposes for professional discipline. In Haley, 117 Wash.2d at 727, 818 P.2d 1062, we stated:
The Legislature enacted the Medical Disciplinary Board Act (Act), the statute creating the Board, in 1955. RCW 18.72. The Act was passed in the exercise of the State's police power to promote the public welfare and to create an administrative agency mandated to act as a disciplinary body for medical professionals. RCW 18.72.010(1). The Act also provides that it was passed because of the paramount importance of the health and well-being of Washington citizens, the role of medical professionals in preserving this health and well-being, and the ineffectiveness of the disciplinary agency that had existed previously. RCW 18.72.010(2)-(4). We interpret the stated purposes of the Act as giving the Board a legislative mandate to pursue vigorously its disciplinary task.
(Emphasis added.) See also Heinmiller, 127 Wash.2d at 602-03, 903 P.2d 433 ("The goal of the Uniform Disciplinary Act, of which RCW 18.130.180 is a part, is to protect the public from the hazards of health care professional incompetence and misconduct.").
Plainly, the central focus of professional discipline in health care is to protect the public and ensure that only competent practitioners provide health care:
The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud. As one means to this end it has been the practice of different States, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely....
Dent, 129 U.S. at 122, 9 S.Ct. 231. The sine qua non of professional licensure and discipline is protection of the public employing professional services. Gandhi v. State Med. Examining Bd., 168 Wis.2d 299, 483 N.W.2d 295, 305 (1992).
The wrongdoing of a physician can be threatening to life and limb. As the United States Supreme Court noted: "We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." Goldfarb v. Va. State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (emphasis added).
*707 The people of Washington certainly have a "compelling interest" in disciplining doctors who fail to meet standards of professional competence, who misprescribe medications, and who sexually abuse their patients. The State's interest in regulating the practice of medicine and protecting the public from incompetent or unscrupulous practitioners is of vital significance to the State and its citizens.
In conclusion, examining and balancing the three Mathews factors for due process, we cannot say the Legislature in its plenary authority over medical discipline violated Dr. Nguyen's right to due process by authorizing the Commission to utilize a preponderance of the evidence burden of proof. Under Mathews, a professional license is a significant property interest with overtones of a liberty interest where the professional's reputation is at stake, but the risk of an erroneous deprivation of such an interest in the Commission context is limited given the procedures afforded a physician before discipline may occur. The paramount interest in professional discipline, however, is the public interest in competent health care practitioners. Due process principles do not compel the clear, cogent, and convincing standard of proof in health care professional discipline cases under the APA.[10]
B. EQUAL PROTECTION
Dr. Nguyen contends the employment of a higher standard of proof in attorney discipline cases commands the use of the higher standard of proof in medical discipline cases on equal protection grounds. The Department here adopted the preponderance standard by rule pursuant to a broad grant of procedural authority by the Legislature. As we noted in Haddenham v. State, 87 Wash.2d 145, 150, 550 P.2d 9 (1976), however, the Legislature is afforded wide discretion in making classifications in legislation:
The legislature is given a wide scope of discretion in enacting laws which affect some groups of citizens differently from others. The guaranty is not of absolute equality, requiring the law to treat all persons exactly alike. Tigner v. Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124, 130 A.L.R. 1321 (1940). The constitutional *708 safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).
It is an established rule of law in this state that an enactment is presumptively valid, and the burden is upon the challenger to prove that the questioned classification does not rest upon a reasonable basis. State v. Perrigoue, 81 Wash.2d 640, 503 P.2d 1063 (1972). Merely challenging the wisdom or expediency of the statute is insufficient. Brewer v. Copeland, 86 Wash.2d 58, 542 P.2d 445 (1975).
Dr. Nguyen's reliance on cases of attorney and judicial discipline is misplaced. He neglects to note that the Washington Constitution consigns regulation of health care professionals to the Legislature, while regulation of the legal profession has always been an inherent power of this Court under separation of powers principles. Graham v. State Bar Ass'n, 86 Wash.2d 624, 628, 548 P.2d 310 (1976).
The requirement of a clear, cogent, and convincing standard of proof in In re Disciplinary Proceeding Against Allotta, 109 Wash.2d 787, 748 P.2d 628 (1988) (attorney discipline), was adopted by rule pursuant to our plenary authority to establish regulations for the practice of law. RLD 4.11(b); arguably, it is within our power to adopt a lower standard of proof should we wish to do so.
Under a separation of powers analysis, just as we have plenary power over the qualifications of attorneys, the Legislature enjoys considerable authority over licensure of the health care professions. WASH. CONST. art. XX, § 2. This asymmetry of different standards of proof for discipline of lawyers and judges, as compared to discipline of doctors in Washington, is possible under the constitutional design the people of Washington have chosen for regulation of physicians,[11] and cannot be said to be irrational where the Legislature did not make the classification. The Legislature's grant of authority to the Department and the Department's choice of the burden of proof is rooted in a strong desire to protect the public from incompetent practitioners who can place their life and limb at risk. No constitutional violation is present.

CONCLUSION
Under the Act and Washington's APA, in light of the plenary authority of the Legislature over medical practice, a preponderance of the evidence standard, adopted by agency rule making, applies to the Commission's proceedings, in the absence of a legislative determination to the contrary. Under the Washington Constitution, the legislative branch of government has the right to set policy for the disciplining of health care practitioners.
In carefully balancing the interests of all concerned, as Mathews requires, we conclude the preponderance of the evidence standard of proof better calibrates the balance of interests between the practitioner and the public, given the vital concern of the people for protection from negligent or dishonest practitioners, a concern stated in the Washington Constitution: medical professionals have a right to due process before their professional license may be taken away, but the people also have an equally significant need to protect themselves against incompetent and dishonest professionals.
The preponderance of the evidence standard does not violate Dr. Nguyen's right to due process or equal protection. Dr. Nguyen received fundamental fairness in the adjudication of the charges against him under *709 the statutory and regulatory procedures afforded him. The decision of the Commission should be affirmed.
GUY, J.P.T., and BRIDGE, J., dissent.
NOTES
[1] Throughout the course of this litigation the petitioner has been referred to both as Dr. Bang and as Dr. Nguyen. We are mindful that in the Vietnamese tradition the surname is given first, thus Dr. Bang is proper. However since his counsel refers to him as such and since the case is so captioned we will refer to the petitioner as Dr. Nguyen.
[2] The Medical Disciplinary Board was the predecessor of the Medical Quality Assurance Commission.
[3] Some jurisdictions have asserted the mere preponderance standard is sufficient to satisfy due process: Sherman v. Comm'n on Licensure to Practice the Healing Art, 407 A.2d 595 (D.C.1979) (preponderance standard applies in medical and attorney disciplinary proceedings); Rucker v. Mich. Bd. of Med., 138 Mich.App. 209, 360 N.W.2d 154 (1984) (preponderance standard in medical discipline); Anonymous v. State Bd. of Med. Exam'rs, 329 S.C. 371, 496 S.E.2d 17 (1998) (preponderance standard applies); In re Wang, 441 N.W.2d 488 (Minn. 1989) (preponderance standard); Eaves v. Bd. of Med. Exam'rs, 467 N.W.2d 234 (Iowa 1991) (preponderance standard); In re Grimm, 138 N.H. 42, 635 A.2d 456 (1993) (preponderance); Johnson v. Ark. Bd. of Exam'rs in Psychology, 305 Ark. 451, 808 S.W.2d 766 (1991) (preponderance, same as in attorney discipline); Gandhi v. State Med. Examining Bd., 168 Wis.2d 299, 483 N.W.2d 295 (1992) (preponderance for physician but clear and convincing for attorneys); In re Polk, 90 N.J. 550, 449 A.2d 7 (1982) (preponderance standard in medical disciplinary proceedings); Gallant v. Bd. of Med. Exam'rs, 159 Or.App. 175, 974 P.2d 814, 816 (1999) (due process was satisfied by the mere preponderance standard). But see Bernard v. Bd. of Dental Exam'rs, 2 Or.App. 22, 465 P.2d 917 (1970) (due process requires the clear and convincing standard in professional license revocations involving fraud or misrepresentation) and Van Gordon v. Or. State Bd. of Dental Exam'rs, 52 Or.App. 749, 629 P.2d 848 (1981) (a license revocation based on fraud requires proof by clear, satisfactory, and convincing evidence).

Notwithstanding, the more recent decisions trend toward requiring the higher standard of proof: Painter v. Abels, 998 P.2d 931 (Wyo.2000) (both due process and equal protection require clear and convincing standard in medical disciplinary proceedings); Johnson v. Bd. of Governors, 913 P.2d 1339 (Okla.1996) (due process requires clear and convincing standard in medical disciplinary proceeding as license revocation is quasi-criminal in nature); Robinson v. State ex rel. Okla. State Bd. of Med. Licensure & Supervision, 916 P.2d 1390 (Okla.1996) (clear and convincing standard required for professionally licensed persons); Silva v. Superior Court, 14 Cal.App.4th 562, 17 Cal.Rptr.2d 577 (1993) (clear and convincing standard required); Ettinger v. Bd. of Med. Quality Assurance, 135 Cal.App.3d 853, 185 Cal.Rptr. 601 (1982) (clear and convincing to a reasonable certainty required in medical licensure proceedings); Rife v. Dep't of Prof'l Regulation, 638 So.2d 542 (Fla.App.1994) (clear and convincing); Ferris v. Turlington, 510 So.2d 292 (Fla.1987) (clear and convincing in license revocations); Bernard v. Bd. of Dental Exam'rs, 2 Or.App. 22, 465 P.2d 917 (1970) (license revocation requires clear and convincing); Sobel v. Bd. of Pharmacy, 130 Or.App. 374, 882 P.2d 606 (1994) (clear and convincing standard has been required in license revocations, but preponderance applies in license application); In re Zar, 434 N.W.2d 598 (S.D.1989) (all professional license revocation proceedings require clear and convincing standard); Miss. State Bd. of Nursing v. Wilson, 624 So.2d 485 (1993) (where fraud or quasi-criminal activity is alleged the clear and convincing is required); Davis v. Wright, 243 Neb. 931, 503 N.W.2d 814 (1993) (medical discipline like attorney discipline requires clear and convincing standard); Devous v. Wyo. State Bd. of Med. Exam'rs, 845 P.2d 408 (Wyo.1993) (clear and convincing in medical disciplinary hearings).
See also Supreme Court cases applying higher standard where important individual interests are at issue: Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (due process requires clear and convincing standard in civil commitment as it is quasi-criminal in nature); Woodby v. Immigration & Naturalization Serv., 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation); Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960) (denaturalization); Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943) (denaturalization); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (termination of parental rights).
[4] Dr. Nguyen's professional license represents a property interest to which due process protections apply. Johnson v. Bd. of Governors, 913 P.2d 1339 (Okla.1996) (holding a professional license is a constitutionally protected interest in property); see also Wash. State Med. Disciplinary Bd. v. Johnston, 99 Wash.2d 466, 474, 663 P.2d 457 (1983) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of `liberty' or `property' interests within the meaning of the due process clauses of the fifth and fourteenth amendments to the United States Constitution.").
[5] See Ritter v. Bd. of Comm'rs of Adams County Pub. Hosp. Dist. No. 1, 96 Wash.2d 503, 510-11, 637 P.2d 940 (1981); Johnston, 99 Wash.2d at 474, 663 P.2d 457 (applying due process analysis to medical disciplinary hearings because they "deprive individuals of `liberty' or `property' interests"); see also Painter, 998 P.2d at 940 ("[P]ersons have a basic liberty interest in pursuing vocations.").
[6] Roscoe Pound, The Rule of Law and the Modern Social Welfare State, 7 Vand. L.Rev. 1, 12 (1953).
[7] See supra n. 2.
[1] In the Vietnamese tradition, family names are listed first. While it would be culturally appropriate to refer to the petitioner as Dr. Bang, we follow the usage of the majority and refer to him as Dr. Nguyen, to avoid confusion.
[2] The statute creating the Commission specifically adopts the Act. RCW 18.71.019. The Act, in turn, adopts the procedures of the Administrative Procedure Act (APA), chapter 34.05 RCW, as to license revocation. RCW 18.130.100.
[3] The APA provides for judicial review of an agency adjudicative order where (a) the order violates the constitution, (b) the order is outside the agency's authority, (c) the agency engaged in unlawful procedure, (d) the agency erroneously interpreted or applied the law, or (e) the order is not supported by substantial evidence. RCW 34.05.570(3).
[4] While a professional license is a property interest, it does not have the usual attributes of either personal or real property. It does not have an exchange value or any objective transferable value on an open market. It is individual to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. It may not be acquired by the expenditure of money.
[5] Courts have recognized various fundamental rights including the right to marry, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); the right to vote, Harper v. Va. State Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); the right of association, Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); the right of access to the courts, NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); the right of natural parents with respect to termination proceedings, Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); the right to privacy, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); the right of free exercise of religion, Johnson v. Robison, 415 U.S. 361, 375 n. 14, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); the right to travel, Jones v. Helms, 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981); the right of natural parents to make decisions as to the care, custody, and management of their children, Santosky v. Kramer, 455 U.S. 745, 755, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); and the right to decide regarding artificial medical life support procedures, Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990).
[6] In Ritter v. Bd. of Comm'rs of Adams County Pub. Hosp. Dist. No. 1. 96 Wash.2d 503, 510, 637 P.2d 940 (1981), we held a liberty interest could be present if a public employee's integrity, honor, or good name was called into question by their dismissal from public employment. See also Giles v. Dep't of Soc. & Health Servs., 90 Wash.2d 457, 461, 583 P.2d 1213 (1978). In Ritter, we held the physician was entitled to due process to protect his property and liberty interests, but we ultimately upheld his loss of hospital staff privileges.

The Court's discernment of a liberty interest in Ritter and Giles may be explained in part by the unique facts of those cases. In Giles, we noted there is no constitutional property interest in public employment. Giles, 90 Wash.2d at 461, 583 P.2d 1213. In Ritter, we similarly found no property interest in hospital staff privileges. Ritter, 96 Wash.2d at 509-10, 637 P.2d 940. In this case, Dr. Nguyen had a property interest in his medical license.
[7] A careful review of Washington law suggests the Dr. Nguyen's simplistic formula is simply wrong. For instance, it is wellsettled that "a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." In re Winship, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); accord State v. Crediford, 130 Wash.2d 747, 759, 927 P.2d 1129 (1996). But even in the area of criminal law, there are numerous occasions when preponderance of the evidence is sufficient to carry a burden of proof. For example, the State bears the burden of proving by only a preponderance of the evidence the voluntariness of a defendant's confession. State v. Braun, 82 Wash.2d 157, 162, 509 P.2d 742 (1973) (citing Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)). When the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the standard of proof is only preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); accord State v. Robtoy, 98 Wash.2d 30, 35-36, 653 P.2d 284 (1982). If the prosecution can establish by a mere preponderance that evidence it seeks to introduce ultimately or inevitably would have been discovered by lawful means, the evidence may be admitted. State v. Warner, 125 Wash.2d 876, 889, 889 P.2d 479 (1995) (citing Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), cert. denied, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985)). To admit evidence of prior crimes under ER 404(b), the trial court must find only by a preponderance of the evidence the claimed misconduct occurred. State v. Brown, 132 Wash.2d 529, 571, 940 P.2d 546 (1997).

In Washington's statutory law, the Legislature has adopted the clear and convincing standard of proof in many instances where only money is involved. For instance, according to RCW 11.12.095(3), dealing with "omitted spouses," as the statute defines that term, "[t]he omitted spouse must receive an amount equal in value to that which the spouse would have received under RCW 11.04.015 if the decedent had died intestate, unless the court determines on the basis of clear and convincing evidence that a smaller share, including no share at all, is more in keeping with the decedent's intent." RCW 4.24.460(2) creates a presumption of liability on the part of the operators of nuclear waste repositories that is rebuttable by clear and convincing evidence "that the nuclear incident was not the result of the operator's negligence and that the operator's negligence was not an actual cause of the nuclear incident." RCW 19.118.095(2), dealing with motor vehicle warranties, permits the State to charge a fine for noncompliance with an agency decision, "unless the manufacturer can provide clear and convincing evidence that any delay or failure was beyond its control or was acceptable to the consumer as evidenced by a written statement signed by the consumer."
Washington's common law also shows the presence of varying standards of proof that do not fit neatly into categories. Fraud must be proved by clear and convincing evidence. Smith v. Doty, 91 Wash. 315, 323, 157 P. 881 (1916). A person who asserts the creation of a trust by operation of law must produce evidence that is clear, cogent, and convincing to carry the burden of proving the trust exists. Rodgers v. Simmons, 43 Wash.2d 557, 561, 262 P.2d 204 (1953). Wills are presumed to be valid, and the burden is upon will contestants to prove the contrary by clear, cogent, and convincing evidence. In re Estate of Riley, 78 Wash.2d 623, 656, 479 P.2d 1 (1970). "The burden of showing excessive valuation made by the assessor was upon the appellant, and to overthrow the correctness of his determination of values requires evidence of the most clear and convincing character before the court can say that there has been worked any constructive fraud upon appellant's rights as a taxpayer." Heuston v. King County, 90 Wash. 200, 202, 155 P. 773 (1916). Clear, cogent, and convincing is the standard of proof for those attempting to prove a resulting trust. In re Estate of Spadoni, 71 Wash.2d 820, 822-23, 430 P.2d 965 (1967). Here again, the clear and convincing standard applies in situations that involve money only.
These cases demonstrate the appropriate standard of proof depends on many more considerations than whether "mere money" is involved in the outcome of the dispute.
[8] By contrast, the Commission on Judicial Conduct must have a majority of lay members. WASH. CONST. ART. IV. § 31(1).
[9] RCW 34.05.449(2) provides, in part: "To the extent necessary for full disclosure of all relevant facts and issues, the presiding officer shall afford to all parties the opportunity to respond, present evidence and argument, conduct cross-examination, and submit rebuttal evidence...." Dr. Bang availed himself of these rights.
[10] Although we have considered the issue independently and in light of factors particular to Washington, we note that our holding represents the majority rule. Courts in numerous jurisdictions including Alabama, Arkansas, Connecticut, District of Columbia, Iowa, Michigan, Minnesota, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Utah, South Carolina, Texas, and Wisconsin, have upheld the preponderance of the evidence standard in professional discipline cases against constitutional challenges. See listing of cases at Johnson v. Bd. of Governors, 913 P.2d 1339, 1353 (Okla.1996) (Summers, J., dissenting in part). Recently, in Anonymous (M-156-90) v. State Bd. of Med. Exam'rs, 329 S.C. 371, 496 S.E.2d 17 (1998), the South Carolina Supreme Court reversed a contrary intermediate appellate court decision and held the preponderance standard was constitutional.

A minority of jurisdictions has determined the clear, cogent, and convincing standard of proof is necessary for medical disciplinary proceedings. See, e.g., Johnson, 913 P.2d 1339 (because of penal nature of disciplinary proceedings against dentist, Oklahoma constitution requires clear and convincing standard of proof). None of the states requiring clear and convincing evidence, like Oklahoma, bases its determination on constitutional grounds, however. In Mississippi, the determination to use the clear and convincing standard stems not from constitutional concerns, but from the egregious conduct of the individuals subject to discipline. See Miss. State Bd. of Nursing v. Wilson, 624 So.2d 485 (Miss. 1993) (crime of false pretenses); Hogan v. Miss. Bd. of Nursing, 457 So.2d 931, 934 (Miss. 1984) (misappropriation of narcotics); Levi v. Miss. State Bar, 436 So.2d 781, 783 (Miss.1983) (fraud and equivalent forms of misconduct). The Mississippi Supreme Court simply held in these cases, copying the model of civil cases, that clear and convincing is the appropriate standard of proof for such offenses. The Nebraska Supreme Court did not consider due process in adopting the clear and convincing standard for discipline of a psychiatrist. Rather, for the "sake of uniformity and clarity," the court adopted the same standard for physicians as was already in place for lawyers. Davis v. Wright, 243 Neb. 931, 936, 503 N.W.2d 814 (1993). Two cases are of importance in California. In Silva v. Superior Court, 14 Cal.App.4th 562, 571, 17 Cal.Rptr.2d 577 (1993), the court interpreted the applicable statute to require clear and convincing evidence, and made no constitutional determination. In Ettinger v. Bd. of Med. Quality Assurance, 135 Cal.App.3d 853, 856, 185 Cal.Rptr. 601 (1982), the court also presented no constitutional analysis in adopting the clear and convincing standard, holding only it would be "anomalous" for disciplinary proceedings involving physicians to have a lower standard of proof than disciplinary proceedings involving lawyers. See also Painter v. Abels, 998 P.2d 931 (Wyo.2000).
[11] Courts in several states have actually found differing standards of proof for discipline of attorneys and physicians not to violate equal protection. See, e.g., In re Polk, 90 N.J. 550, 449 A.2d 7 (1982); Eaves v. Bd. of Med. Exam'rs, 467 N.W.2d 234 (Iowa 1991); Petition of Grimm, 138 N.H. 42, 635 A.2d 456 (1993); Anonymous (M-156-90) v. State Bd. of Med. Exam'rs, 329 S.C. 371, 496 S.E.2d 17 (1998). As the Iowa Court cogently observed:

The state is free to deal with different professions differently without violating the equal protection guarantees established under the federal and state constitutions. This is particularly true where the regulations being compared have been established by different branches of government.
Eaves, 467 N.W.2d at 237 (citation omitted).