[No. 9592–7–I. Division One. January 17, 1983.]

RICHARD MARQUARDT, *as Insurance Commissioner, Respondent,* v. FEDERAL OLD LINE INSURANCE COMPANY, *Defendant,* WASHINGTON LIFE & DISABILITY INSURANCE GUARANTY ASSOCIATION, *Appellant.*

RICHARD MARQUARDT, *as Insurance Commissioner, Respondent,* v. PROTECTIVE AMERICAN LIFE INSURANCE COMPANY, *Defendant,* WASHINGTON LIFE & DISABILITY INSURANCE GUARANTY ASSOCIATION, *Appellant.*

RICHARD MARQUARDT, *as Insurance Commissioner, Respondent,* v. RAINIER NATIONAL LIFE INSURANCE COMPANY, *Defendant,* WASHINGTON LIFE & DISABILITY INSURANCE GUARANTY ASSOCIATION, *Appellant.*

*Sandra D. Bates* and *Carney, Stephenson, Badley, Smith & Mueller,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Eugene H. Sage* (of *Julin, Fosso & Sage*), *Special Assistant,* for respondent.

DURHAM, A.C.J.—Washington Life and Disability Insurance Guaranty Association (Guaranty Association) appeals a determination that fringe benefits are part of the "compensation" paid to special deputy insurance commissioners acting as receivers for insolvent insurance companies. It also appeals the court's denial of an injunction to prevent the State from seeking reimbursement from it for fringe

benefit expenses.

The Guaranty Association is a statutory nonprofit entity created to assure performance of insolvent insurers. Under RCW 48.32A, it is responsible for the obligations of the insolvent insurers, including obligations under the special deputy commissioner statute. It assesses its member insurance companies to provide funds to meet these obligations.

When an insurance company is adjudged insolvent, the Insurance Commissioner (Commissioner) is by statute named the receiver. RCW 48.31.120(1). The Commissioner may in turn appoint special deputies to act for him in the day–to–day duties of a delinquency proceeding. RCW 48.31.120(6). The statute also provides that:

> The compensation of the special deputies . . . and all expenses of taking possession of the insurer and of conducting the proceedings shall be fixed by the receiver, subject to the approval of the court, and shall be paid out of the funds or assets of the insurer.

The dispute between the Guaranty Association and the Commissioner on the scope of the Guaranty Association's obligation to pay insolvency expenses is long standing.

In 1976, the Guaranty Association was one of several defendants in a suit by the State against then Commissioner Karl Herrmann for problems arising in the rehabilitation and insolvency proceedings[1] of Federal Old Line Insurance Company. As its eighth cause of action, the State alleged that from December 1966 through February 1975, the State had expended over $41,000 in the Federal Old Line proceedings. In settlement of this eighth cause of action, the Guaranty Association agreed to pay $32,500; the State agreed not to pursue its eighth cause of action and to dismiss the Guaranty Association from the suit without prejudice. The parties also agreed to forgo any additional claims based on facts "involved in or . . . incident to" three related suits covered by the settlement. The settlement

---

[1] From 1964 the Commissioner had been conducting the business of Federal Old Line in an attempt to rehabilitate it; the proceeding was converted to a liquidation proceeding in 1971.

documents consisted of an agreement, a covenant not to sue, and a release and discharge of claims.

The dispute in the proceeding below involved the fringe benefits paid to Special Deputy Commissioner Virgil McQueen, who represented the Commissioner as receiver in three insolvency proceedings: that of Federal Old Line Insurance Company, decreed insolvent in December 1971; Rainier National Life Insurance Company, decreed insolvent in March 1977; and Protective American Life Insurance Company, decreed insolvent in November 1979. McQueen had served on the payroll of the companies in receivership, although the State continued to include him as an employee under the State's fringe benefit programs and had paid those expenses itself.[2]

In 1978, the Commissioner (through the special deputy commissioner) petitioned the court acting in the Rainier receivership for reimbursement of fringe benefit expenses paid by the State from March 1975 through September 1978. The request apparently included expenses in both the Rainier and Federal Old Line proceedings. The court initially issued an order approving this reimbursement, but in February 1979 set aside the order. In March 1980, the Guaranty Association petitioned the Rainier receivership court for a declaratory judgment that payment of fringe benefits was the obligation of the State. Thereafter, the parties agreed that the question was best resolved in the Protective American Life proceeding, and in June 1980, the Guaranty Association filed a similar petition for declaratory judgment and for injunctive relief in that proceeding. It is from the orders entered by the court acting in the Protective American Life proceeding that the Guaranty Association now appeals.

---

[2]In 1978, the State sought to change the arrangement so that the special deputy commissioner would be maintained on the State payroll and the Commissioner, as receiver, would petition the court for reimbursement of all expenses. The record does not reveal whether this change has taken place, but the question of reimbursement for fringe benefits has remained open until this action was decided.

 ██ The Guaranty Association first contends that the responsibility for payment of fringe benefits was decided by the settlement of the eighth cause of action in the 1976 suit. Its attempt to invoke principles of res judicata and collateral estoppel, however, is unsound. The 1976 suit was for expenses incurred over a specific time and the Commissioner has not attempted to obtain reimbursement for fringe benefits paid during this period. Any attempts to hold the Guaranty Association liable for fringe benefits paid at a different time, in different receivership proceedings, or under different factual situations would not be barred by res judicata because different evidence would be required to prosecute the new claims. *See Meder v. CCME Corp.*, 7 Wn. App. 801, 806, 502 P.2d 1252 (1972). Even assuming that the same issue—the inclusion of fringe benefits within "compensation"—arose in both cases,[3] res judicata does not bar successive suits on successive causes of action involving the same legal issues. *Farnandis v. Seattle*, 95 Wash. 587, 164 P. 225 (1917). It is true that collateral estoppel may bar relitigation of the same issue in a later suit for a different cause of action. *Seattle First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 588 P.2d 725 (1978). But collateral estoppel should not be applied to judgments of dismissal, even when based on settlement agreements, since the parties could settle for myriad reasons not related to the resolution of the issues they are litigating. *See* Annot., 91 A.L.R.3d § 6(a), at 1183 (1979).

Nor can we find in the settlement documents themselves any suggestion that the State agreed to release all future claims it might have against the Guaranty Association for fringe benefits. The documents unambiguously relate to the

---

[3]Neither the complaint nor the settlement documents in the 1976 case mention fringe benefits. The complaint alleged that the Guaranty Association had agreed to pay only $29,000 of the $41,000 expended. The Guaranty Association made a general denial. It now contends that the additional $12,000 represented fringe benefit payments. The complaint did not specify what expenses were included in the claimed $41,000. The record does not reveal what extent the controversy over fringe benefits played in the settlement.

specific, liquidated, and time–bound claim made in the eighth cause of action and to other "consequences" of the specific lawsuit. We will not interpret these documents to hold that a "consequence" of that suit was to decide an issue of statutory interpretation neither framed in the pleadings nor mentioned in the documents.

The fundamental issue raised in this appeal is if the word "compensation", as used in RCW 48.31.120(6), includes fringe benefits. The statute itself does not define the term compensation and our research reveals that this is a question of first impression in Washington.[4] In interpreting the statute, therefore, the court must ascertain and give effect to the intent and purpose of the Legislature. *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977).

The Guaranty Association urges that, since nothing inherent in the term compensation compels inclusion of fringe benefits, we should exclude them because of past practices of the Commissioner. The Guaranty Association argues that for many years the Commissioner did not attempt to obtain reimbursement for fringe benefits, and that this constitutes an agency interpretation of the statute which should be decisive. Even if the agency had "interpreted" the statute by its actions, however, the court is the ultimate interpreter and construer of statutes. *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978). The court is not bound by an agency interpretation, but should make independent analysis of the statute. *Hearst Corp. v. Hoppe, supra.*

Nothing inherent in the term compensation compels exclusion of fringe benefits. The court below concluded that fringe benefits are "generally regarded within the scope of compensation", given "attention by the employee, . . . and

---

[4]RCW 48.31.110–.180, the statutes covering liquidation of insolvent insurers, is based on the Uniform Insurers Liquidation Act, 13 U.L.A. 429 (Master ed. 1980). At present, 35 states have adopted some form of this uniform act, but their courts have apparently not yet interpreted the term compensation.

a lot of attention by the employer and by bargaining units." We find this commonsense view to be more in harmony with the statutory scheme of which RCW 48.31.120 is a part. It is clear that the various statutory responsibilities of the Insurance Commissioner are primarily intended to benefit the public. *See Herrmann v. Cissna,* 82 Wn.2d 1, 507 P.2d 144 (1973). The policy behind the body of statutes regulating insurance in Washington is stated in RCW 48.01.030:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance.

The provisions of RCW 48.31.120(6) are consistent with this policy by providing that the compensation of special deputies, and "all expenses" of the insurer and of conducting the delinquency proceeding should be borne by the insurance industry, not by the public. The purpose of the statute is to make the Commissioner's office whole, and fringe benefits paid to special deputies while they are acting as representatives of the Commissioner seem clearly to be part of the expense the Commissioner incurs in carrying out his statutory duties.[5] We, therefore, agree with the trial court that compensation, within the context of RCW 48.31-.120(6), "includes the cost of employee fringe benefits attributable to services rendered by Special Deputy Insurance Commissioners."

The Guaranty Association's further contentions that the Commissioner should be equitably estopped from seeking reimbursement for fringe benefits, or that he has waived the State's right to so seek it, are without merit. The Guaranty Association has failed to show that it rea-

---

[5]The record indicates that the accounting procedures used by the Commissioner assure that an insurer is responsible only for the expenses, including compensation, incurred while the special deputy is actually employed on the insurer's proceeding.

692

sonably and detrimentally relied on any act of the Commissioner. There are, thus, no grounds for equitable estoppel. *See In re Kitsap–Mason Dairymen's Ass'n,* 6 Wn. App. 926, 497 P.2d 604 (1972); *Leonard v. Washington Employees, Inc.,* 77 Wn.2d 271, 461 P.2d 538 (1969). Nor has it shown that it has suffered "manifest injustice" necessary to a finding of equitable estoppel against the State. *See, e.g., Wasem's, Inc. v. State,* 63 Wn.2d 67, 385 P.2d 530 (1963); *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 182 P.2d 643 (1947); *Mercer Island v. Steinmann,* 9 Wn. App. 479, 513 P.2d 80 (1973). Finally, there is no "evidence, inconsistent with any other intention, of an intent to relinquish [a] right" which is the requisite of waiver. *Bonanza Real Estate, Inc. v. Crouch,* 10 Wn. App. 380, 387, 517 P.2d 1371 (1974).

The judgment is affirmed.

CALLOW and RINGOLD, JJ., concur.