[No. 34249-9-II.   Division Two.   February 6, 2007.]

DAVITA, INC., *Appellant*, v. THE DEPARTMENT OF HEALTH ET AL., *Respondents*.

*James M. Beaulaurier*; and *Kathleen D. Benedict* (of *Benedict Garratt Pond, PLLC*), for appellant.

*Robert M. McKenna, Attorney General*, and *Melissa A. Burke-Cain, Senior Counsel*; and *Douglas C. Ross* and *Lisa R. Hayward* (of *Davis Wright Tremaine, LLP*), for respondents.

¶1 BRIDGEWATER, J. — DaVita, Inc., a large independent dialysis service provider, appeals a superior court decision

denying its petition for review of the Department of Health's decision not to issue a certificate of need (CON) for DaVita to open a dialysis center in Poulsbo. We hold that although the Department of Health's CON Program (Program), the unit that initially evaluates CONs, initially awarded the CON to DaVita, the health law judge's (HLJ) decision to reverse the Program was appropriate.

¶2 We hold that the HLJ's decision was the final agency decision that is subject to judicial review because the secretary of health delegated final authority over CON applications to the HLJ. We hold that substantial evidence supported the HLJ's decision that Olympic Peninsula Kidney Center's application was superior to DaVita's because it cost less and its commercial rates were lower. We also hold that DaVita's due process rights were not violated because the agency decision was discretionary and the HLJ complied with the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW. Thus, the trial court did not err in denying DaVita's petition. We affirm.

FACTS

¶3 In August 2003, DaVita and Olympic both applied to the Department of Health[1] for a CON to build a kidney dialysis treatment center in Poulsbo, Washington. DaVita is a for-profit corporation operating 1,200 kidney treatment clinics in 32 states, with 41,000 patients. Olympic, on the other hand, is a Washington corporation with kidney dialysis centers in Bremerton and Port Orchard. Olympic is currently the sole dialysis provider in the area.

¶4 A CON is a nonexclusive license for health care providers wishing to establish new facilities. *St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 736, 887 P.2d 891 (1995). The Program processes all CON applications.

---

[1] The Department of Health administers CON applications. RCW 70.38.105(1).

¶5  In this case, under the authority granted under RCW 70.38.115(7) and WAC 246-310-110(2)(d), the Program elected to treat the applications as competing and subject them to concurrent review. Both DaVita and Olympic were aware that, under concurrent review, only one application might be granted. Although either party could have requested a public hearing, neither did.

¶6  In December 2003, the Program closed the record and began the comparative review. Under concurrent review, the Program must "determine which of the projects may best meet identified needs." RCW 70.38.115(7). The administrative code establishes four criteria for evaluating CON applications: (1) need, WAC 246-310-210; (2) financial feasibility, WAC 246-310-220; (3) structure and process of care, WAC 246-310-230; and (4) cost containment, WAC 246-310-240.

¶7  On May 21, 2004, the Program issued its written evaluation, concluding that there was need for a 12-station kidney dialysis center. Because both applications met the criteria for need, financial feasibility, and structure and process of care, the Program focused on the last criterion, cost containment, as the method for evaluating competing proposals. WAC 246-310-240 requires that an applicant demonstrate that "[s]uperior alternatives, in terms of cost, efficiency, or effectiveness, are not available or practicable." WAC 246-310-240(1). The Program reasoned that if DaVita's application was a superior alternative, Olympic had failed to meet the cost containment criterion and its application should be denied. Thus, the Program decided that DaVita's application, as the superior alternative, should be granted.

¶8  Although the WACs indicate that the superior alternative is to be evaluated in "terms of cost, efficiency, or effectiveness," WAC 246-310-240(1), the Program justified its decision on the basis that DaVita's proposal would allow patients choice of providers and create price competition. According to Janis Sigman, the Program's manager, patient choice was the "tiebreaker" that elevated DaVita's applica-

tion. Administrative R. (AR) at 1894. Accordingly, on May 28, 2004, the Department of Health issued CON No. 1285 to DaVita.

¶9 Olympic requested an adjudicatory hearing to appeal the Program's decision. The secretary of the Department of Health has delegated the authority to make final decisions and enter final orders on a CON application to an HLJ. Here, HLJ Zimmie Caner held a hearing on October 4 and 7, 2004, taking live testimony, depositions, and exhibits as evidence.

¶10 While admitting that patient choice and price competition could be factors in determining which proposal was the more "effective" and which fostered cost containment, the HLJ found that, contrary to the Program's determination, DaVita's application would not allow significant patient choice between the existing Olympic facilities and DaVita's proposed facilities. The HLJ based this decision, in part, on her finding that the drive times between the new facility, Olympic's existing facility in Bremerton, and the prospective patients foreclosed most patients from choosing between providers. The HLJ also found that the Program had no evidence that DaVita's proposal would create any price competition or lower fees.

¶11 Turning to the criteria listed in the WACs, the HLJ adopted the Program's findings about the need for kidney dialysis. And the HLJ determined that DaVita and Olympic would have similar structure and process (quality) of care. In the area of cost containment, relying on evidence Olympic presented, the HLJ also found that DaVita's commercial charges would be higher than Olympic's. With regard to financial feasibility, the HLJ found that DaVita's projected operating expenses were higher than Olympic's. In fact, the HLJ reasoned, DaVita's projection was lower than the actual expense because DaVita understated its rental expense by roughly one-half million dollars each year. As a result, the HLJ found that there was doubt about DaVita's financial feasibility and cost containment and found that, because of this, DaVita was not the better applicant.

¶12 The HLJ also noted that Olympic's projected time frame for building the Poulsbo center was 10 months shorter than DaVita's application projected. The HLJ specifically noted that Olympic's time frame was credible. In her conclusions, the HLJ explained that while the earlier opening date was not a factor listed in the statute or in the WACs, it was relevant to "efficiency" and "effectiveness" under WAC 246-310-240.

¶13 On February 28, 2005, the HLJ issued a final order reversing the Program's decision to grant DaVita's application and deny Olympic's. The HLJ directed the Program to issue a CON to Olympic. Both the Program and DaVita moved for reconsideration. On May 26, the HLJ's amended final order confirmed that Olympic should be granted a CON and reversed the Program's decision to grant a CON to DaVita.

¶14 DaVita filed a petition for judicial review. The superior court denied the petition under WAPA. The superior court determined that it was reviewing the HLJ's order. It held that substantial evidence supported the HLJ's factual findings and that the HLJ did not exceed her authority in issuing the final order.

## ANALYSIS

### I. Standard of Review

¶15 All of the parties agree that WAPA governs this appeal. RCW 34.05.510 (indicating that WAPA "establishes the exclusive means of judicial review of agency action" with some exceptions not applicable here). In reviewing an administrative action, we sit in the same position as the superior court, applying WAPA to the record before the agency. *Towle v. Dep't of Fish & Wildlife*, 94 Wn. App. 196, 203, 971 P.2d 591 (1999). And the party challenging the validity of the agency's action bears the burden of showing the action was invalid. RCW 34.05.570(1)(a).

¶16 Under WAPA, we may grant relief only in limited circumstances. We may, for example, grant relief where the agency engaged in unlawful procedure, RCW 34.05.570(3)(c); the agency has erroneously interpreted or applied the law, RCW 34.05.570(3)(d); or substantial evidence does not support the agency's order, RCW 34.05-.570(3)(e). We review an agency's factual findings to determine whether they are supported by substantial evidence sufficient to persuade a fair-minded person of the declared premise. *Towle*, 94 Wn. App. at 204. We overturn an agency's factual findings only if they are clearly erroneous. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 588, 90 P.3d 659 (2004). Although we give weight to the agency's interpretation of the statutes it administers, we review the agency's legal conclusions de novo. *Towle*, 94 Wn. App. at 204.

¶17 Before we can apply any of these standards in this case, we must identify the applicable "agency action." An "[a]gency action" is defined as "licensing . . . , the adoption or application of an agency rule or order . . . , or the granting or withholding of benefits." RCW 34.05.010(3). And an "[o]rder" is a "written statement . . . that finally determines the legal rights, duties, privileges, immunities, or other legal interests of a specific person or persons." RCW 34.05.010(11)(a).

¶18 Here, the HLJ is the secretary's designee, with the authority to make final decisions and issue a final order for CON applications. Thus, the agency action we review here is the HLJ's written order, not the Program's written evaluation. The HLJ's order "finally determine[d]" the legal rights of the parties in this case. RCW 34.05.010(11)(a). Therefore, we review the HLJ's order under WAPA standards described above. *Accord Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 405-06, 858 P.2d 494 (1993) (holding that the agency's final decision maker's findings are those relevant on appeal).

¶19 We also clarify the HLJ's classification within WAPA's scheme. The HLJ seemed to believe she was a

reviewing officer as well. Under WAPA, "[t]he officer reviewing the initial order . . . is . . . termed the reviewing officer." RCW 34.05.464(4). WAPA provides that the "reviewing officer shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing." RCW 34.05.464(4).

¶20 In this case, however, the HLJ was not acting as a reviewing officer. As RCW 34.05.464(4) indicates, a reviewing officer is someone who does not preside over an adjudicatory hearing. But the HLJ did preside over a hearing. And the reviewing officer merely reviews "the whole record or such portions of it as may be cited by the parties." RCW 34.05.464(5). But the HLJ took evidence. Thus, the HLJ did not behave as a reviewing officer.

¶21 Instead, the HLJ was, as the Department of Health points out in its brief, the "[p]residing [o]fficer." Br. of Resp't at 2. WAPA provides that a presiding officer may be an administrative law judge designated by the agency to make the final decision and enter the final order. RCW 34.05-.425(1)(b). And the presiding officer is defined in the Department of Health administrative code as "the person who is assigned to conduct an adjudicative proceeding" who "may be an employee of the department who is authorized to issue a final decision as designee of the secretary." WAC 246-10-102.

¶22 Furthermore, rather than reviewing the record, the presiding officer actually takes the evidence, listens to oral argument, and issues her own findings and conclusions. RCW 34.05.449(2), .461(4). The applicable WACs indicate that the presiding officer conducts the hearing de novo. WAC 246-10-602(2)(a). Thus, the HLJ possesses all the decision-making power; she does not need to rely on RCW 34.05.464. In other words, she does not need to substitute her judgment for that of the fact finder; she is the agency's fact finder.

¶23 DaVita argues that even if the HLJ may take evidence, she must give deference to the Program's exper-

tise. DaVita cites to RCW 34.05.461(5), which indicates that "[w]here it bears on the issues presented, the agency's experience, technical competency, and specialized knowledge may be used in the evaluation of evidence." The HLJ, Department of Health, and Olympic all argue that the HLJ need not give any particular deference to the Program analysts. We agree.

¶24  WAPA defines an agency as "any state board, commission, department, institution of higher education, or officer, authorized by law to make rules or to conduct adjudicative proceedings." RCW 34.05.010(2). Applied to this case, because the HLJ is an "officer, authorized by law to . . . conduct adjudicative proceedings," she fits within WAPA's definition of an agency. RCW 34.05.010(2). And classifying the HLJ as the "agency" makes sense in this context. As the designee with the authority to make final decisions, she is the officer charged with exercising the agency's discretion. Thus, in this context, she decides how to apply the agency's expertise to evaluate the evidence. She is, after all, the one evaluating the evidence.

¶25  The Department of Health's administrative review is distinguishable from administrative review used in other agencies. For example, in the Employment Security Department, the department makes an initial decision on a claim. *See Tapper*, 122 Wn.2d at 400-01 (describing procedural history of an unemployment compensation claim). The employer may then appeal to an administrative law judge, and if still not satisfied, the employer can appeal that decision to the commissioner of the department. *Tapper*, 122 Wn.2d at 401. In that context, the commissioner, as the agency head, has the "final authority for agency decisionmaking." *Tapper*, 122 Wn.2d at 405.

¶26  In contrast, the Department of Health's agency head has delegated final decision-making authority to the HLJ. Although the HLJ is an administrative law judge, she is also the agency's final decision maker on CON applications. And in that position, it is within her discretion to apply the agency's expertise. DaVita complains that this arrange-

ment collapses the Department of Health's adjudicative and decision-making roles. DaVita is correct; the HLJ is both the adjudicative officer and the final decision maker. That is the intent of this statutory and regulatory scheme.

¶27 This does not mean that the HLJ is free to completely disregard the Program's decision. WAPA allows a court to intervene where the agency's action is arbitrary or capricious. RCW 34.05.570(3)(i). Accordingly, if the HLJ's decision to disregard the Program's decision rises to the level of an arbitrary agency action, relief may be warranted.

## II. Burden of Proof

¶28 With the applicable standard of review in mind, we turn to DaVita's first argument that we should reverse the HLJ because she applied an incorrect burden of proof. As this involves a question of law, our review is de novo. *Towle*, 94 Wn. App. at 204.

¶29 DaVita advances two arguments regarding the burden of proof. First, it argues that the HLJ should have required Olympic to prove that "a preponderance of the evidence did not support the Program's decision to issue the CON to DaVita rather than [Olympic]." Br. of Appellant at 23. In other words, DaVita wants us to require Olympic to bear the burden of proof to demonstrate DaVita's application should have been denied. Second, DaVita argues that the HLJ applied a substantial evidence standard rather than a preponderance standard.

¶30 DaVita is partially correct; Olympic does have a burden of proof for its own application. The administrative code requires the "applicant to establish that the application meets all applicable criteria." WAC 246-10-606. And the code also provides that the "burden in all cases is a preponderance of the evidence." WAC 246-10-606. Thus, Olympic has the burden of proving that its application meets all the criteria for a CON. But Olympic does not bear the burden of showing that DaVita's application was incor-

rectly granted; DaVita carries the burden of showing its application met all of the criteria.

¶31 DaVita argues that this result is unfair because it requires it to prove its case before the Program and then before the HLJ. DaVita suggests that, as the prevailing party under the Program's decision, it had no burden in the adjudicative proceeding. But this argument fails to take into account that the HLJ's review in this case was de novo. WAC 246-10-602(2)(a). Accordingly, the HLJ had to make factual findings on all material issues—including whether DaVita met its burden.

¶32 At first blush, assigning the burden of proof to both parties in a comparative review may seem nonsensical. Logically, parties in an adverse proceeding cannot both bear the burden of proof on a single issue. But this is not an adversary proceeding; it is a competitive one. Both applicants had to prove to the State that they were entitled to a CON. It was possible, for example, that the Program could have rejected both applications. Thus, the burden of proof is on each applicant to prove that its application meets the applicable criteria. In this case, both Olympic and DaVita had the burden of proof for their respective applications.

¶33 DaVita's next argument is that the HLJ misapplied the burden of proof. DaVita points to the HLJ's conclusion of law 2.7, which states:

> The burden of proof in an adjudicative proceeding regarding a CON is preponderance of the evidence. WAC 246-10-606. Evidence should be the kind that "reasonably prudent persons are accustomed to rely [on] in the conduct of their affairs." RCW 34.05.461(4). The Program's decision is not reasonable in light of substantial evidence to the contrary that Olympic is the "superior" applicant. WAC 246-310-240.

AR at 739. As DaVita notes, the phrase "substantial evidence" has a legal meaning usually associated with appellate review of findings of fact. *See Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986), *cert. dismissed*, 479 U.S. 1050 (1987). Thus, this conclusion of law appears

inconsistent because it applied both a burden of proof and an appellate standard of review.

¶34 As indicated above, the HLJ's inquiry was de novo and the issue was whether by a preponderance of the evidence Olympic and DaVita met their burden to show that their applications met the relevant criteria. Accordingly, if the HLJ had applied a substantial evidence test, it would have erred.

¶35 We have authority, as an appellate court, to interpret a lower tribunal's findings. *Tapper*, 122 Wn.2d at 406. We do not interpret conclusion of law 2.7 to mean that the HLJ used an incorrect standard. The rest of the HLJ's findings and conclusions of law do not display any indication that the HLJ applied a lower burden of proof to Olympic. In fact, in conclusion of law 2.19, the HLJ unequivocally concluded that "Olympic is the 'superior' and more 'efficient' applicant under WAC 246-310-240 with a better projected budget, projected fees, and a projected opening date." AR at 744.

¶36 Instead, we conclude that the "substantial evidence" language was an inadvertent use of a legal phrase, what might be termed "loose language." If anything, the last sentence of this paragraph appears to be a factual finding that the Program's decision was not reasonable, not a legal conclusion that substantial evidence was the appropriate burden of proof. Given that the HLJ very clearly and correctly stated that the burden of proof in this case was a preponderance of the evidence, we reject DaVita's argument that the HLJ applied an incorrect burden of proof. At most, this was a misstatement and harmless.

¶37 Affirmed.

¶38 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ARMSTRONG and HUNT, JJ., concur.