FILED
COURT OF APPEALS
DIVISION II

2015 MAY 27 AM 9: 33

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FAIRUZA STEVENSON, | No. 45834-9-II |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF HEALTH, NURSING CARE QUALITY ASSURANCE COMMISSION, | |
| Respondent. | |

BJORGEN, A.C.J. — Fairuza Stevenson appeals a superior court order affirming a decision by the Washington State Department of Health's Nursing Care Quality Assurance Commission (Commission). The Commission found that Stevenson, by refusing over several days to obey a physician's order to provide doses of a medication to Patient A, had breached the standard of conduct for nurses and acted outside the scope of practice allowed by Stevenson's registered nurse's license. Based on these findings, the Commission concluded that Stevenson was subject to discipline under the Uniform Disciplinary Act (UDA), chapter 18.130 RCW, and sanctioned her.

On appeal, Stevenson claims that (1) the Commission's findings that she breached the relevant standard of conduct and acted outside the scope of practice are not supported by

substantial evidence, (2) the Commission's conclusions that she violated provisions of the UDA are erroneous, and (3) collateral estoppel, res judicata, and an earlier stipulation agreement made pursuant to CR 2A with the Department of Social and Health Services (DSHS) to settle a related matter bar the Commission's order. We hold that (1) substantial evidence supports the Commission's findings, (2) the Commission correctly concluded that Stevenson violated several provisions of the UDA, and (3) nothing precluded the Commission's order. Consequently, we affirm the superior court.

## FACTS

Stevenson is a registered nurse and operates an adult family home through a corporation called Stevenson Group Inc. Stevenson provides nursing services through her work at the home.

Patient A first came to the adult family home operated by Stevenson Group Inc. in 2005.[1] By 2007, one of Patient A's physicians had prescribed a blood thinning medication to treat some of her health problems. Another physician had prescribed antibiotics. The combination of these drugs produced bleeding in one of Patient A's eyes, requiring her admission to a local hospital for treatment. Patient A's discharge orders discontinued the doses of the blood thinner.

In November 2007, Patient A again was hospitalized, this time for fever and abdominal pain. Dr. Meituck Hu, Patient A's treating physician, diagnosed an infection in her leg related to a prosthetic implant and prescribed antibiotics to remedy it. Because she believed the problem with the prosthetic implant would limit Patient A's mobility, Hu also prescribed prophylactic doses of enoxaparin, another blood thinner, to prevent deep vein thrombosis, the potentially fatal

---

[1] To protect her privacy, the agency record refers to the patient at issue as Patient A. We follow that nomenclature.

formation of blot clots in Patient A's legs. Hu's discharge orders continued Patient A's daily doses of enoxaparin for one month.

After discharge on November 24, 2007, Patient A returned to the adult family home operated by Stevenson Group Inc. Stevenson, aware of Patient A's history, made attempts to contact Patient A's primary care physician to ask him to discontinue the enoxaparin based on fears it could lead to eye bleeding and vision loss. While waiting for this order, Stevenson refrained from giving Patient A the daily enoxaparin dose Hu had prescribed. Stevenson had great difficulty in getting the order to discontinue enoxaparin from the primary care physician, but made no attempts to contact Hu, physicians covering for Hu at the hospital, or Patient A's other physicians. Eventually, feeling that she could not wait any longer, Stevenson gave Patient A an enoxaparin dose on December 3, 2007, hours before the primary care physician faxed an order to discontinue the drug.

Stevenson's refusal to give Patient A the enoxaparin spawned two state administrative actions. In the first, DSHS took action against Stevenson Group Inc., the entity licensed to operate the adult family home. Specifically, DSHS alleged that the failure to give the enoxaparin violated WAC 388-76-620, a provision requiring the adult family home to "ensure that the resident receives necessary [medical] services."[2] Administrative Record (AR) at 149-50 (citing WAC 388-76-620). Stevenson, as the representative of the home, signed a corrective action plan and Stevenson Group Inc. settled the matter by paying an $800 fine to DSHS from its corporate checking account.

---

[2] The DSHS complaint against the adult family home also alleged a second violation unrelated to this appeal.

The second administrative action concerned Stevenson's license to practice as a registered nurse. The Commission alleged that Stevenson violated various subsections of RCW 18.13.180 and WAC 246-240-710(2) when she refused to give Patient A the enoxaparin.[3] Stevenson's motion to dismiss the matter, based on her theory that the settlement with DSHS precluded any action by the Commission, was denied and the matter proceeded to an administrative hearing before a panel of the Commission.

At the hearing, the Department of Health, which prosecuted the complaint, presented two witnesses: Hu and Stevenson. Hu testified about her diagnosis and treatment of Patient A, including her decision to prescribe prophylactic doses of enoxaparin. Hu admitted that she had not known about Patient A's recent eye bleeding episode when she ordered the enoxaparin, but

---

[3] RCW 18.130.180 provides, in relevant part:
> The following conduct, acts, or conditions constitute unprofessional conduct for any license holder under the jurisdiction of this chapter:
>
> . . .
>
> (4) Incompetence, negligence, or malpractice which results in injury to a patient or which creates an unreasonable risk that a patient may be harmed;
>
> . . .
>
> (7) Violation of any state or federal statute or administrative rule regulating the profession in question, including any statute or rule defining or establishing standards of patient care or professional conduct or practice;
>
> . . .
>
> (12) Practice beyond the scope of practice as defined by law or rule.

WAC 246-840-710 provides that:
> The following conduct may subject a nurse to disciplinary action under the Uniform Disciplinary Act, chapter 18.130 RCW:
>
> . . .
>
> (2) Failure to adhere to the standards enumerated in WAC 246-840-700 which may include, but are not limited to:
>
> . . .
>
> (d) Willfully or repeatedly failing to administer medications and/or treatments in accordance with nursing standards.

stated that knowing about the incident would not have changed her order: she believed that Patient A's problems with her implant limited her mobility and placed her at a risk of fatal deep vein thrombosis, requiring prophylactic doses of enoxaparin. On questioning from one of the commission members, Hu testified that the benefits of prophylactic enoxaparin outweighed any potential risks of bleeding given the extreme dangers of developing deep vein thrombosis. Hu also testified that she expected her orders "to be followed," AR at 340, unless the nurse implementing the order had questions and brought those questions to either her or another doctor covering for her. Hu specifically stated that the reason she expected any nurse questioning a medication order to contact her or a covering physician was because of possible problems getting in contact with a primary care doctor. Finally, Hu testified that registered nurses had no authority to "unilaterally write a prescription order or change a prescription order." AR at 340.

Stevenson admitted that, as a nurse, she had to follow a physician's prescription order and that she had no authority to unilaterally alter a prescription. Stevenson also admitted that she did not attempt to contact Hu, the hospital, or any of Patient A's other doctors when having difficulty communicating with Patient's A's primary care doctor.

Stevenson presented testimony from three expert witnesses in her defense. Each opined that Stevenson had not breached the standard of conduct for registered nurses because she had a duty to question the order to give enoxaparin, which she and the expert witnesses believed was inappropriate for Patient A. On cross-examination, one of Stevenson's experts stated that, when refusing to comply with a physician order, a nurse had a duty to present his or her concerns to the physician. Also on cross-examination, one of the other experts agreed that Patient A was at risk of developing deep vein thrombosis.

The Commission found that

5

1.11 Physician medication orders must be carried out as ordered in order to ensure patient safety. The scope of practice . . . of a registered nurse does not include the authority to unilaterally fail to follow physician orders. Nor does the standard of care for a registered nurse permit a nurse to engage in such action. The nursing standard of care requires that in circumstances where a registered nurse has concerns about a physician order, the nurse should attempt to contact the physician as soon as possible to discuss her concerns.

1.12 As a result of the Respondent's failure to follow the physician medication order and failure to attempt to contact the treating physician about her concerns, Patient A was placed at an unreasonable risk of harm. Although Patient A suffered no apparent harm from the missing medication, Patient A could have suffered significant harm including death as a result of the Respondent's actions.

AR at 292.

Based on these findings, the Commission concluded that Stevenson had committed unprofessional conduct as defined by RCW 18.130.180(4), (7), (12) and WAC 246-840-710(2)(d). The Commission imposed a fine and a requirement that Stevenson complete some continuing education courses, as well as placing Stevenson's nursing license on probation for two years.

Stevenson appealed the Commission's findings of fact, conclusions of law, and order to the superior court, which affirmed. This appeal followed.

ANALYSIS

I. STANDARDS OF REVIEW

Washington's Administrative Procedure Act (APA), chapter 34.05 RCW, governs appeals of discipline imposed under the UDA. RCW 18.130.140. Under the APA, when reviewing an agency action, we sit in the same position as the superior court and apply the APA's standards directly to the agency record. *DaVita, Inc. v. Dep't of Health*, 137 Wn. App. 174, 180, 151 P.3d 1095 (2007). The APA allows relief from an agency order for any of nine enumerated reasons. RCW 34.05.570(3). As relevant here, we may grant relief where the agency's order "is not supported by evidence that is substantial when viewed in light of the

whole record before the court," or where the Commission has "erroneously interpreted or applied the law." RCW 34.05.570(3)(d), (e). Stevenson bears the burden of showing the invalidity of the Commission's order. RCW 34.05.570(1)(a).

We review challenged commission findings for substantial evidence in the record, RCW 34.05.570(3)(e), and consider unchallenged findings verities on appeal. *Fuller v. Dep't of Emp't Sec.*, 52 Wn. App. 603, 606, 762 P.2d 367 (1988). When reviewing the record for substantial evidence to support challenged findings, we view the evidence in the light most favorable to the Commission and accept the Commission's "'views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.'" *William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 411, 914 P.2d 750 (1996) (quoting *State ex rel. Lige & William B. Dickson Co. v. Pierce County*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)). Evidence supporting a finding is substantial where it would convince a rational, fair-minded person of the finding's truth. *Lawrence v. Dep't of Health*, 133 Wn. App. 665, 671, 138 P.3d 124 (2006).

We review the Commission's legal conclusions de novo. *DaVita*, 137 Wn. App. at 181. However, we accord great deference to the Commission's interpretation of the UDA and the rules it has promulgated pursuant to its authority under chapter 18.79 RCW. *Verizon Nw, Inc. v. Wash. Emp't Sec. Div.*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008); *DaVita*, 137 Wn. App. at 181. We review Stevenson's preclusion claims de novo. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004) (collateral estoppel); *Nevers v. Fireside, Inc.*, 133 Wn.2d 804, 809, 947 P.2d 721 (1997) (court rules interpreted de novo); *Lynn v. Dep't of Labor & Indus.*, 130 Wn. App. 829, 837, 125 P.3d 202 (2005) (res judicata).

## II. THE FINDINGS OF FACT

Stevenson, although not assigning error to any specific findings of fact, generally argues that substantial evidence did not support findings of fact 1.11 and 1.12, set out above. In these, the Commission found that Stevenson (1) failed to adhere to the relevant standard of conduct, (2) practiced outside the scope of practice, and (3) placed Patient A at an unreasonable risk of harm. Stevenson's arguments largely center on evidence she presented and her claims that the Department of Health did not present expert testimony that she violated the standard of conduct at the hearing before the Commission. The Commission contends that substantial evidence in the record supports its findings. We agree with the Commission.

Turning first to finding of fact 1.11, testimony offered at trial supported the Commission's finding that Stevenson failed to adhere to the standards of conduct required of a registered nurse. Hu testified that she expected Stevenson to implement her discharge orders, although she stated that Stevenson could question that order by speaking with her. Hu also testified that Stevenson, as a registered nurse, lacked the authority to alter the prescriptions that were part of the discharge orders, which Stevenson did by failing to give the enoxaparin. One of Stevenson's own experts testified that any nurse who refused to fulfill a physician order based on concerns about the order had a duty "to convey to the doctor that she is not fulfilling that order and she is not giving that medication because of these concerns." AR at 379. A reasonable inference from this testimony is that nurses have a duty to follow the orders given by a doctor unless they raise concerns about the order with the doctor. Stevenson refused to follow Hu's orders and failed to contact Hu or a covering physician to explain why she was declining to do so. The Commission could readily find that Stevenson failed to comply with nursing standards from those facts.

No. 45834-9-II

Testimony at trial also supported the Commission's finding, embodied in finding of fact 1.11, that Stevenson practiced outside the scope of practice granted by her nursing license. Hu, one of Stevenson's experts, and Stevenson herself all testified that registered nurses lack "prescriptive authority and must act at the direction of a physician." AR at 340, 379, 506. This testimony allowed the Commission to find that Stevenson, by refusing to follow the direction of Hu, had practiced outside the scope of authority granted to her by her registered nursing license.

Stevenson, however, contends that substantial evidence does not support finding 1.11 because the Department of Health failed to provide expert testimony that she breached the standard of care at the hearing. She is incorrect. The APA provides that agencies in general may utilize their expertise when evaluating factual matters. RCW 34.05.452(5). The regulations governing proceedings before the Commission specifically authorize it to make use of its expertise when making factual determinations. WAC 246-11-160. Common law precedent also recognizes that medical discipline boards like the Commission do not need expert testimony about any possible breach of the standard of care, because such testimony is not helpful when the fact finder, as here, includes experts. *Ames v. Dep't of Health*, 166 Wn.2d 255, 261-62, 208 P.3d 549 (2009); *Davidson v. Dep't of Licensing*, 33 Wn. App. 783, 785-86, 657 P.2d 810 (1983). As noted above, the State presented evidence that would allow the Commission, based on its expertise, to find that Stevenson breached her standard of care.[4]

---

[4] Stevenson notes that two members of the panel adjudicating the Department of Health's complaint were licensed practical nurses instead of registered nurses, like Stevenson. This appears to be an argument that we should not allow the Commission's panel to determine the appropriate standard of conduct and scope of practice.

RCW 18.79.070(2) provides for the Commission's make-up and requires that it include two advanced registered nurse practitioners, seven registered nurses, three licensed practical nurses, and three members of the public. RCW 18.79.070(2) does not require that commission panels include only members of the same professional type as the appellant. We read that

9

Stevenson also contends that substantial evidence does not support finding 1.11 because she presented testimony that she declined to dose Patient A with enoxaparin because of fears that it would cause her to bleed, and her experts testified that, by doing so, she had not breached the standard of conduct. That evidence, though, does not change the result of our review. The Commission acted as the fact finder and accorded what it deemed the appropriate weight to the evidence each side presented and the inferences reasonably drawn from that evidence. In doing so, it gave greater weight to the evidence offered by the Department of Health and the inferences drawn from that evidence. We will not upset that determination on appeal. *Ancier v. Dep't of Health*, 140 Wn. App. 564, 575, 166 P.3d 829 (2007).

We also hold that substantial evidence supports finding of fact 1.12, the Commission's finding that Stevenson's actions placed Patient A at an unreasonable risk of harm. Hu testified that Patient A's condition at the time of her admission to the hospital rendered her immobile and placed her at risk of developing deep vein thrombosis. One of Stevenson's experts agreed. Hu also testified that development of deep vein thrombosis risked a quick death. A reasonable inference from this testimony is that the withholding of prophylactic doses of enoxaparin, which would prevent deep vein thrombosis, put Patient A at risk of dying. The Commission could find from that testimony that Stevenson's actions placed the patient at an unreasonable risk of harm.

---

omission as embodying the legislature's belief that, as an institution, the Commission has the relevant experience and knowledge necessary to adjudicate nursing misconduct.

Further, Stevenson does not explain how the panel's composition affects the panel's expertise. WAC 246-840-700(2)(a)(i)(D), discussed below and which governs standards of practice for registered nurses, does not appear to operate differently than WAC 246-840-700(2)(b)(i)(D), also discussed below and which governs the standards of practice for licensed practical nurses. Two other provisions discussed below, WAC 246-840-700(3)(a) and -710(2)(d) apply to both licensed practical nurses and registered nurses. Stevenson fails to show how the panel's composition extinguishes the Commission's expertise recognized by the case law.

Stevenson challenges finding of fact 1.12 by claiming the evidence shows the wisdom of her choice to withhold the enoxaparin. Specifically, Stevenson argues that the evidence shows that Patient A lived two years after the December 3, 2007 injection of enoxaparin without any further prophylactic doses of blood thinner. The fact that Stevenson's choice to withhold enoxaparin did not result in actual harm to Patient A or that the patient continued to live without enoxaparin is irrelevant to our review on appeal. The Commission's findings and the relevant law, RCW 18.130.180(4), concern the risk of harm. As noted above, Hu testified to the risks from Stevenson's failure to follow her orders. On this evidence, the Commission could readily find that Stevenson's choice to withhold enoxaparin was a gamble that placed Patient A at an unreasonable risk of harm.

### III. THE CONCLUSIONS OF LAW

Stevenson also appears to challenge in three different ways the Commission's conclusions that she committed unprofessional conduct. For the following reasons, however, the challenged conclusions are correct.

Stevenson challenges conclusion of law 2.4, the conclusion that she committed unprofessional conduct by violating RCW 18.130.180(4), by claiming that no evidence showed her actions placed Patient A at an unreasonable risk of harm. As discussed above, substantial evidence supports finding of fact 1.12 that Stevenson's actions placed Patient A at an unreasonable risk of harm. Conclusion 2.4 flows directly from that finding and finding 1.11 that Stevenson breached the standard of conduct required by nurses. We affirm the conclusion. *Nguyen v. Dep't of Health Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 530, 29 P.3d 689 (2001) (this court reviews conclusions by looking to whether the factual findings support them).

Stevenson challenges conclusion of law 2.5, the conclusion that she committed unprofessional conduct under RCW 18.130.180(12), and conclusion of law 2.6, the conclusion that she committed unprofessional conduct under RCW 18.130.180(7), by claiming that the Department of Health failed to show that she breached the standard of conduct or practiced beyond the scope of acceptable practice. Specifically Stevenson claims that WAC 246-840-700 prescribes the scope of practice and the standard of conduct for nurses and that her conduct violated no part of that provision.

With regard to conclusion of law 2.5, RCW 18.130.180(12) includes practicing beyond the scope of practice as unprofessional conduct. With finding of fact 1.11, the Commission found that Stevenson practiced beyond the scope of practice when she unilaterally changed Patient A's prescription by failing to follow Hu's order. As noted above, substantial evidence supported that finding. Finding of fact 1.11 supports the Commission's conclusion of law 2.5 that Stevenson committed unprofessional practice. RCW 18.130.180(12). Therefore, we affirm the Commission's conclusion. *Nguyen*, 144 Wn.2d at 530.

As concerns conclusion of law 2.6 that Stevenson committed unprofessional conduct under RCW 18.130.180(7), that statute defines unprofessional conduct to include the violation of any state or federal statute or regulation establishing the standard of conduct for the profession. WAC 246-840-700(2)(a)(i)(D) establishes one such standard of conduct. It requires nurses to "*implement*[] the plan of care by initiating nursing interventions through giving direct care and supervising other members of the care team." WAC 246-840-700(2)(a)(i)(D) (emphasis added). WAC 246-840-700(3)(a) establishes another standard of conduct, providing that "[t]he registered nurse . . . shall communicate significant changes in the client's status to appropriate members of the health care team. This communication shall take place in a time period consistent with the

12

client's need for care." WAC 246-840-710(2)(d) establishes a final, relevant, standard of conduct. That provision forbids any nurse from "[w]illfully or repeatedly failing to administer medications . . . in accordance with nursing standards." WAC 246-840-710(2)(d).

A number of the Commission's findings support the conclusion that Stevenson committed unprofessional conduct under RCW 18.130.180(7). The Commission found in finding of fact 1.9, a finding unchallenged and therefore a verity on appeal, that Stevenson failed to provide Patient A her enoxaparin dose from November 24, 2007 to December 3, 2007. With finding 1.11, a finding supported by substantial evidence, the Commission found that Stevenson breached the standard of conduct by refusing to obey the order to provide enoxaparin. With finding of fact 1.12, a finding supported by substantial evidence, and finding of fact 1.10, a finding unchallenged and therefore a verity on appeal, the Commission found that Stevenson failed to communicate her refusal to follow Hu's order or to any covering physician. Those findings support a conclusion that Stevenson violated WAC 246-840-700(2)(a)(i)(D), -700(3)(a), and -710(2)(d) by repeatedly declining to implement Hu's orders to provide a daily dose of enoxaparin without communicating to Hu that she was not complying with the order and explaining her reasons for her refusal. Each of those WAC violations constituted unprofessional conduct under RCW 18.130.180(7). We affirm conclusion of law 2.6. *Nguyen*, 144 Wn.2d at 530.

## IV. PRECLUSION

Stevenson also contends that a number of preclusion doctrines prevented the Commission from entering its order. We disagree.

A.     Res judicata

Res judicata bars "[r]esurrecting the same claim in a subsequent action." *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 31, 891 P.2d 29 (1995). "The threshold requirement" for applying the doctrine of res judicata "is a final judgment on the merits" in a prior action. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004). Once a party satisfies that threshold, we review whether the current action and the prior one involve the same claim by looking to whether the two involve the same "subject matter, cause of action, people and parties, and . . . 'quality of the persons for or against whom the claim is made.'" *Hisle*, 151 Wn.2d at 865-66 (quoting *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983)). Stevenson bore the burden of showing each of these elements to preclude the Commission from entering its order. *Hisle*, 151 Wn.2d at 865, 866.

Stevenson's res judicata claim fails on at least one of the elements. Both Stevenson's and the Commission's briefing assume that she was a party to the DSHS proceeding. She was not. The DSHS proceeding involved a complaint against Stevenson Group Inc., and payment for the fine in those proceedings came from the corporation's accounts. The commission proceedings involved a complaint against Stevenson. The corporation has an existence separate and apart from Stevenson's. *W. Wash. Laborers-Emp'rs Health & Sec. Trust Fund v. Harold Jordan Co.*, 52 Wn. App. 387, 392, 760 P.2d 382 (1988). Observing that separate existence means holding that the corporation, not Stevenson, was a party to the DSHS action and Stevenson, not the corporation, was a party to the Commission action. Res judicata does not bar the Commission's order.

14

B.    Collateral Estoppel

Collateral estoppel bars relitigation of an issue decided in a prior proceeding, even where the subsequent proceeding involves different claims or causes of action. *Rains*, 100 Wn.2d at 665 (quoting *Seattle-First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 225-26, 588 P.2d 725 (1978)). Collateral estoppel only applies where (1) the prior proceeding decided an issue identical to the one presented in the subsequent action, (2) there was a final judgment on the merits, (3) the party to be estopped was a party to the prior proceeding or in privity with a party to the proceeding, and (4) estopping the party will not produce an injustice. *Rains*, 100 Wn.2d at 665 (quoting *Seattle-First Nat'l Bank v. Cannon*, 26 Wn. App. 922, 927, 615 P.2d 1316 (1980)). Stevenson bore the burden of proving the earlier proceeding estopped the Commission. *State Farm Mut. Auto. Ins. Co. v. Avery*, 114 Wn. App. 299, 304, 57 P.3d 300 (2002).

The DSHS proceeding did not result in a final judgment on the merits, but instead ended in settlement with Stevenson agreeing to pay a fine. Settlements are not considered final judgments on the merits for purposes of collateral estoppel, because parties may settle for "myriad reasons not related to the resolution of the issues they are litigating." *Marquardt v. Fed. Old Line Ins. Co. (Mut.)*, 33 Wn. App. 685, 689, 658 P.2d 20 (1983); *Krikava v. Webber*, 43 Wn. App. 217, 222, 716 P.2d 916 (1986). Without a final judgment on the merits, collateral estoppel does not apply.

C.    CR 2A Settlement Agreement

Finally, Stevenson contends that the settlement with DSHS constituted a stipulation under CR 2A, releasing all claims that the State may have had against Stevenson for her failure to give

15

Patient A the enoxaparin doses.[5]  We disagree.

The civil rules apply to civil proceedings in Washington's superior courts.  Stevenson provides no authority for the proposition that they apply in administrative proceedings, and we therefore assume that none exists.  *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).  We therefore are not persuaded by her argument.  *DeHeer*, 60 Wn.2d at 126.

## CONCLUSION

We find that substantial evidence supports the Commission's findings and that it did not erroneously interpret or apply the law.  We affirm the superior court order affirming the Commission's decision and order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
BJORGEN, A.C.J.

We concur:

_____
WORSWICK, J.

_____
SUTTON, J.

---

[5] CR 2A provides that

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.